NO. 93-008

IN THE SUPREME COURT OF THE STATE OF MONTANA

1993

LINCOLN COUNTY, MONTANA,

    Petitioner and Appellant,

  -v-

SANDERS COUNTY, THE HARD-ROCK
MINING IMPACT BOARD, THE CITY
OF LIBBY, and NORANDA MINERALS
CORPORATION, INC.

    Respondents and Respondents.

**FILED**

NOV - 2 1993

CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM: District Court of the Nineteenth Judicial District,
In and for the County of Lincoln,
The Honorable Gordon Bennett, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

      Scott B. Spencer, Lincoln County Attorney, Libby,
Montana

    For Respondent:

      Richard M. Weddle, Special Assistant Attorney
General, Department of Commerce, Helena, Montana
(Montana Hard-Rock Mining Impact Board): Robert
Slomski, Sanders County Attorney, Thompson Falls,
Montana; Alan L. Joscelyn, Gough, Shanahan, Johnson
& Waterman, Helena, Montana (Noranda Minerals Corp;
Mark J. Fennessy, Libby City Attorney, Libby,
Montana

Submitted on Briefs: August 12, 1993

Decided: November 2, 1993

Filed:

_____
Clerk

Justice Fred J. Weber delivered the Opinion of the Court.

This is an appeal from a decision of the Nineteenth Judicial District Court, Lincoln County, affirming a decision of the Hard-Rock Mining Board. We affirm.

We restate the issues as follows:

1. Did the District Court err in ruling that Lincoln County could not challenge the standing of Sanders County's objection to the Mining Board's decision?

2. Did the District Court err in determining that the Mining Board did not exceed its authority pursuant to § 90-6-307(8), MCA, of the Hard-Rock Mining Impact Act and § 90-6-404(5), MCA, of the Property Tax Base Sharing Act when it amended the Montanore Plan's allocation of taxes?

In 1989, Noranda Minerals Corp. Inc. (Noranda), applied to the Montana Department of State Lands under § 82-4-335, MCA, for an operating permit for its Montanore Project, a proposed silver and copper mine to be located in Lincoln and Sanders Counties. While the ore body lies beneath the Cabinet Mountain Wilderness Area in Sanders County, access is gained through roads originating in Lincoln County. Surface facilities are also in Lincoln County. The Metal Mine Reclamation Act and the Hard Rock Mining Impact Act (Impact Act) require developers of large scale hard-rock minerals to prepare an "impact plan" identifying any increased costs to local government units for public services and facilities which will be needed as a result of the proposed project. Such costs must be paid by the developer in the form of grants, proceeds of special facility impact bonds, or prepayments of property taxes as may be appropriate pursuant to § 82-4-335(5) and 90-6-307, MCA.

2

Under the Impact Act, an affected local government unit may file an objection to the Impact Plan with the Hard-Rock Mining Board (the Mining Board) when the unit disagrees with an aspect of the Impact Plan, or contends the plan fails to address certain issues adequately. Section 90-6-307, MCA. The Impact Act encourages parties to resolve disputes among themselves, but where resolution has not occurred, the Mining Board is given jurisdiction to resolve the dispute by holding a contested case hearing. Section 90-6-307, MCA.

Also pertinent to this cause is the Hard-Rock Mining Impact Property Tax Base Sharing Act (Tax Base Sharing Act), found at §§ 90-6-401 through 90-6-406, MCA. Operating in conjunction with the Impact Act, it addresses those situations in which the proposed project will have adverse financial impacts on local government units other than those localities in which the mine is located. Because of our tax system in Montana, these adjacent localities would not receive property tax to compensate for the adverse impact of the mine. Therefore, Montana's system allocates a portion of the taxes paid on the valuation of the mine to these adjacent localities. The allocation under the Tax Base Sharing Act is required when the impact plan identifies an adverse financial situation result which affects neighboring local units of government.

The Tax Base Sharing Act in part provides that the real property tax on the mine shall be spread over all governmental units affected based upon the residence of the mine's employees and

3

school age children of such employees. This act was in effect when Noranda submitted its impact plan.

The Montanore Impact Plan predicted that a majority of the project's employees would reside in the Libby area and that Libby would incur significant costs because of the mine development but would not receive a corresponding increase in taxable valuation from the mine to offset the cost. Based on the foregoing analysis, the Impact Plan determined that the Tax Base Sharing Act was applicable and, therefore, the project's taxable valuation should go to Libby and the rest of Lincoln County and not Sanders County.

House Bill 832, Chapter 760, Laws 1991, requires that taxable valuation be assigned to Sanders County. Under this bill, a minimum of 20% of the gross proceeds from the taxable valuation of the project is allocated to those local governments within which the ore body is located.

House Bill 832, which became § 90-6-404, MCA, provides:

> **90-6-404.** Allocation of taxable valuation for local taxation purposes. When property of a large-scale mineral development is subject to the provisions of 90-6-403, the increase in taxable valuation must be allocated by the department of revenue as follows:
> (1) If the board determines that the local government unit in which the ore body or the mineral deposit being mined is located is not affected by the development and if this determination is shown on the impact plan, 20% of the total increase in taxable valuation of the gross proceeds must be allocated to that local government unit. This provision is intended to establish a minimum allocation for the units and does not prohibit proof by a unit that actual direct impacts would exceed 20% of the total impacts of the development.
> (2) The remaining increase in taxable valuation of the mineral development must be allocated between affected counties and affected municipalities according to the following formula based on the place of residence of mineral development employees:

4

(a) A portion, not to exceed 20%, to affected municipalities, based on that percentage of the total number of mineral development employees that reside within municipal boundaries. The taxable valuation allocated to affected municipalities must be distributed to each municipality according to its percentage of the total number of mineral development employees who reside within municipal boundaries. That portion of the taxable valuation distributed to a municipality pursuant to this section is subject to the same county mill levy as other taxable properties located in the municipality.

(b) The remaining portion of the taxable valuation must be distributed to each affected county according to its percentage of the total number of mineral development employees that reside within the county.

(3) The increase in taxable valuation equal to that subject to subsection (2) must be distributed pro rata among each affected high school district according to the percentage of the total number of mineral development high school students that reside within each district.

(4) The increase in taxable valuation equal to that subject to subsection (2) must be distributed pro rata among each affected elementary school district according to the percentage of the total number of mineral development elementary school students that reside within each district.

(5) The distribution formula specified in subsections (2) through (4) may be modified by an impact plan approved as provided in 90-6-307 or amended as provided in 90-6-311, if the modification is needed in order to ensure a reasonable correspondence between the occurrence of increased costs resulting from the mineral development and the allocation of taxable valuation resulting from the mineral development.

During a 90-day review period established by § 90-6-307(6), MCA, the Sanders County Board of Commissioners filed an objection to the Montanore Impact Plan with the Mining Board. This objection challenged 1) the Impact Plan's conclusion that the proposed mining development held no potential for future adverse impacts on Sanders County and, 2) the manner in which the Impact Plan proposed to implement the Tax Base Sharing Act. The parties resolved issue one so that only issue two went before the Mining Board.

5

When negotiations between the parties broke down, the Mining Board held an informal contested case hearing concerning Sanders County's objection. The Mining Board considered the following issues:

1. Whether the Noranda Minerals Corporation Impact Plan for the proposed Montanore mine accurately identified the increased capital and operating costs which would be experienced by the City of Libby, Montana, as a result of the development of the Montanore mine:

2. Whether, if the Plan did accurately identify the increased capital and operating costs which would be experienced by the City of Libby, these increased costs warranted or required application of the Property Tax Base Sharing Act, as the Plan proposed; and

3. Whether, if the effects of the mining development on the City of Libby did warrant or require the application of the Property Tax Base Sharing Act, the Plan correctly described the manner in which the Act should apply.

The Mining Board concluded that the Impact Plan was correct in its projections concerning the impacts to Libby. Further, the Mining Board concluded that these increased costs required application of the Tax Base Sharing Act and that the triggering of the act meant that **all** affected counties and municipalities must be considered, which here includes Libby, Lincoln County and Sanders County.

The Mining Board finally concluded that the Impact Plan did not correctly reflect a reasonable correspondence between the occurrence of increased costs and the allocation of taxable valuation. It, therefore, modified the Impact Plan's allocation of such funds pursuant to **§ 90-6-404(5),** MCA. Under the modified plan adopted by the Mining Board, Sanders County would receive 20% of the anticipated yross proceeds of the taxable valuation of the

6

project, and the remaining 80% would be distributed during the first five years as proposed in the Impact Plan. In year six, the Mining Board affirmed that the first 20% would go to Sanders County, and that as to the remaining 80%, 15% of the remaining 80% of Sanders County's gross proceeds valuation as well as 15% of the mineral development valuation of Lincoln County, would be allocated to Libby. The remainder of such 80% was to be allocated between Lincoln and Sanders Counties based upon their respective contributed taxable valuations. Under § 90-6-404(2), MCA, the allocation to Libby becomes a part of Lincoln County's tax base and represents a part of Lincoln County's share of the taxable valuation.

Lincoln County brought an action in District Court seeking judicial review pursuant to the Montana Administrative Procedure Act (MAPA) of the Mining Board's decision. Section 2-4-702, MCA. The District Court affirmed the Mining Board's decision. Lincoln County appeals the District Court's affirmation.

INTRODUCTION

The legislature recognized that large scale mining operations impact the localities that surround a mining site by producing an influx of new people who in turn put additional stress on a government's financial resources. Impact plans created by a mine's developer pinpoint areas where financial stress is anticipated. When such stress is identified, the Hard Rock Mining Impact Property Tax Base Sharing Act is automatically triggered. The Tax Base Sharing Act allocates funds between affected localities. In

7

this instance, those funds would come from prepaid property taxes and the developer would receive a credit for such taxes until the mine is in production.  In this way local governments affected by the mine opening receive compensation prior to the mine going into production.

The Impact Act states the purpose for requiring impact statements:

> Declaration of necessity and purpose.  The **large-**scale development of mineral deposits in the state may cause an influx of people directly related to the area of the development.  This influx of people and the corresponding increase in demand for local government facilities and services may create a burden on the local taxpayer.  There is a significant lag time between the time when additional facilities and services must be provided and the time when additional tax revenue is available as a result of the increased tax base. In addition, localgovernmentunits in whatever jurisdiction the development is not located may receive substantial adverse economic impacts without benefit of a major increased tax base in the future.  There is therefore a need to provide a system to assist local government units in meeting the initial financial impact of large-scale mineral development.

Section 90-6-301, MCA.

It is within this framework of the legislature's intent that we consider the following issues.

### I.

Did the District Court err in ruling that Lincoln County could not challenge the standing of Sanders County to object to an administrative decision?

Lincoln County argues that the Mining Board can only modify an impact plan where objections were made to parts of the plan.  Here, according to Lincoln County, Sanders County admitted **it will** suffer no increased costs of any kind and therefore, cannot object to the

allocation of taxation. Further, Lincoln County argues that it objected to Sanders County's standing with the District Court and can, therefore, object to this Court.

Sanders County contends that Lincoln County did not raise the issue of standing to the Mining Board and cannot, therefore, raise it before the District Court or this Court.

The District Court determined that Lincoln County had not raised the standing issue before the agency and could not, therefore, raise it before the courts. **MAPA** specifically prohibits parties from raising an issue for the first time on judicial review:

> Initiating **judicial review of contested cases. . . .**
> (1) (b) A party who proceeds before an agency under the terms of a particular statute shall not be precluded from questioning the validity of that statute on judicial review, but such party may not raise any other cruestion not raised before the aoency unless it is shown to the satisfaction of the court that there was good cause for failure to raise the question before the aoency.

Section 2-4-702(1)(b), MCA.

The District Court determined that Lincoln County had not shown good cause for its failure to raise the question before the agency. A review of the record indicates that the District Court was correct in this assessment.

We conclude that Lincoln County cannot raise on judicial review something that it did not raise before the agency itself. Therefore, we hold that the District Court did not err in ruling that Lincoln County could not challenge the standing of Sanders County to object to an administrative decision.

9

Did the District Court err in determining that the Mining Board did not exceed its authority pursuant to § 90-6-307(8), MCA, of the Hard-Rock Mining Impact Act and § 90-6-404(5), MCA, of the Property Tax Base Sharing Act when it amended the Montanore Plan's allocation of taxes?

The Hard-Rock Mining Impact Act allows the Mining Board 60 days following a hearing to make findings to those portions of the impact plan which have been objected to, and if appropriate, amended by the Mining Board. Section 90-6-307(8), MCA. Also, the Tax Base Sharing Act enables the Mining Board to modify an approved impact plan, as well as one modified pursuant to § 90-6-311, MCA, because the impact plan did not mention a governmental unit which will be adversely affected. Section 90-6-404(5), MCA. The Mining Board's ability to modify the plan is defined as "modification . . . needed in order to ensure a reasonable correspondence between the occurrence of increased costs resulting from the mineral development and the allocation of taxable valuation resulting from the mineral development." Section 90-6-404(5), MCA.

The District Court determined that the Mining Board had a great deal of discretion when modifying an impact plan and had not abused its discretion. We determine that this issue involves a question of interpretation of statutes. Such interpretation is a legal conclusion which this Court will review as to whether the District Court was correct. Steer Inc. v. Department of Revenue (1991), 245 Mont. 470, 803 P.2d 601.

Under § 90-6-404(5), MCA, the Mining Board may modify the Impact Plan if it finds a reasonable connection between the impact on a governmental unit and the allocation of taxable valuation.

Lincoln County argues that the Mining Board can only modify the formula set up by the legislature in subsections (2) through (4) of § 90-6-404, MCA. That formula, argues Lincoln County, provides only adjustments to counties that will suffer financially because of an influx in workers. According to Lincoln County, Sanders County is not such a county sustaining loss. Sanders County contends that it is an affected county and that the Mining Board's allocation to it was indicative of a "reasonable connection' to the taxable valuation of the mineral development.

Section 90-6-404(5), MCA, provides:

> (5) The distribution formula specified in subsections (2) through (4) may be modified by an impact plan approved as provided in 90-6-307 or amended as provided in 90-6-311, if the modification is needed in order to ensure a reasonable correspondence between the occurrence of increased costs resulting from the mineral development and the allocation of taxable valuation resulting from the mineral development.

We conclude that the statute includes Sanders County in any permissible modification. While paragraphs (2) through (4) of the code section deal with the influx of workers to local areas, the statute also provides that the modifications under §§ 90-6-307 and 311, MCA, of the act are permitted in order to ensure reasonable correspondence between increased costs and valuation.

As previously described, the Mining Board first allocated 20% of the taxable valuation increase to Sanders County because it is the site of the ore deposit. Sanders County is entitled to that

11

amount even though it fails to prove adverse financial impact. The Mining Board then considered the remaining 80% of taxable proceeds during year six and awarded 15% of the remaining 80% to the City of Libby. This percentage represents concrete projections presented to the Mining Board. The Mining Board then allocated the remainder of the 80% between Lincoln and Sanders Counties based upon each county's respective contributed taxable valuation.

This formula results in Sanders County receiving an amount in addition to the required 20% minimum. We have previously affirmed the portion allocated to Libby based upon the costs which are allocated to it. The Mining Board then divided between Lincoln County and Sanders County based upon their taxable valuation. We emphasize that such division is over and above any projected cost to the two counties related to the mining project. We conclude that such a division is reasonable.

An important fact in the District Court's review of the Mining Board's consideration is that the actual costs involved to surrounding localities amount to only the costs (projected to be 15% of 80% of total mineral development worth of the mine) to Libby. All other revenues the District Court describes as a "windfall." The District Court here makes a distinction between compensation for loss (to finances of Libby where workers reside) and surplus, the increased property valuation of the two counties caused by the mine development where no compensation for loss is a factor. In other words, the Mining Board determined and the District Court agreed that after the first five years Lincoln

12

County would have increased in property valuation enough that it would not need tax base sharing to cover any costs caused by the mine.

On the other hand, the Mining Board and the District Court were cognizant that Sanders County was not in such a good position even though it contained the ore body, because the majority of increased property valuation after year 5 would be in Lincoln County. The Mining Board's analysis shows a reasonable connection between the counties and their respective positions in the Impact Plan.

We hold the District Court did not err in determining that the Mining Board did not exceed its authority pursuant to § 90-6-307(S), MCA, of the Hard-Rock Mining Act and § 90-6-404(5), MCA, of the Tax Base Sharing Act when it amended the Montanore's allocation of taxes.

Affirmed.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____
Justices

13

November 2, 1993

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that the following order was sent by United States mail, prepaid, to the following named:

Scott B. Spencer
Lincoln County Attorney
512 California Ave.
Libby, MT 59923

Richard M. Weddle
Special Asst. Atty. General
Dept. of Commerce, Capitol Station
Helena, MT 59620

Robert Slomski
Sanders County Attorney
P.O. Box 519
Thompson Falls, MT 59873

Alan L. Joscelyn, Esq.     (hand delivered)
Gough, Shanahan, Johnson & Waterman
P.O. Box 1715
Helena, MT 59624

Mark J. Fennessy
Libby City Attorney
505 Mineral Ave.
Libby, MT 59923

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY:_____
    Deputy