No. 01-050

IN THE SUPREME COURT OF THE STATE OF MONTANA

2002 MT 8

HILANDS GOLF CLUB,

Petitioner and Respondent,

v.

JOAN ASHMORE, a/k/a JOAN ZIRKO,

Charging Party/Respondent and Appellant.

APPEAL FROM: District Court of the Thirteenth Judicial District,

In and for the County of Yellowstone,

The Honorable Wm. Nels Swandal, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Donald C. Robinson, Poore, Roth & Robinson, P.C., Butte, Montana

For Respondent:

James H. Goetz, Goetz, Gallik Baldwin & Dolan, P.C., Bozeman, Montana

For Amicus Brief (ACLU):

Elizabeth Brenneman, Attorney at Law, Helena, Montana

Submitted on Briefs: August 16, 2001
Decided: January 18, 2002

Filed:

_____

Clerk

Justice Terry N. Trieweiler delivered the Opinion of the Court.

¶1 The Petitioner, Hilands Golf Club, filed a Petition for Judicial Review in the District Court for the Thirteenth Judicial District Court in Yellowstone County to set aside a Montana Human Rights Commission order which found Hilands had committed gender discrimination to the detriment of the Respondent, Joan Ashmore. The District Court vacated the Human Rights Commission order based on its conclusion that Ashmore lacked standing and her claim was moot. Ashmore appeals the District Court's dismissal. We reverse the order of the District Court.

¶2 The following issue is dispositive on appeal:

¶3 Did the District Court err when it considered claims that Ashmore lacked standing and her claim was moot, even though those arguments were made for the first time in the District Court?

## FACTUAL BACKGROUND

¶4 The Hilands Golf Club is a member-owned, private country club in Billings, Montana. Prior to 1989, Hilands limited its full membership, which included voting privileges, to men only. Wives of male members were considered "associate" members. That status included no voting privilege or proprietary interest in the Club.

¶5 In 1989, the Montana Legislature amended the Montana Human Rights Act to prohibit gender discrimination in places of public accommodation. *See* § 49-2-304, MCA. As a liquor license holder, the Hilands Golf Club qualified as a place of public accommodation.

¶6 On April 20, 1989, in response to the Legislature's action, Hilands amended its bylaws and adopted a gender neutral membership policy. Hilands also modified its "blackballing" procedure (by which any three members could deny an applicant membership) and set up a grievance procedure to handle discrimination complaints. Women were allowed to join

the Club for the $5,000 membership fee, and assume full membership status.

¶7 Steve Zirko joined Hilands on August 22, 1988, and his wife, Joan Ashmore, became an "associate" member. Zirko and Ashmore knew of Hilands' men-only membership policy at the time. However, no other membership choices were available. Following the 1989 amendments, women were allowed to become voting members, and spouses of members, whichever gender, were made "associate" members. Despite the bylaw change, Ashmore alleged that *de facto* discrimination continued, and that Hilands continued to publish, distribute and enforce gender-specific rules and regulations which either limited or denied services, facilities, and privileges to women.

¶8 On August 20, 1990, Ashmore filed a preliminary complaint with the Montana Human Rights Commission pursuant to § 49-2-501(1), MCA, alleging gender discrimination. Ashmore filed a second preliminary complaint on October 2, 1990. On March 28, 1991, Ashmore filed a formal complaint with the Commission in which she alleged:

> A. My husband is a member of the respondent's golf club and I am an associate member of the club.
>
> B. The majority of respondent's voting membership are [sic] male. Females were not permitted voting memberships until a year ago. Respondent has only two female members.
>
> C. The majority of the associate members are [sic] wives of voting members.
>
> D. Respondent has a rule regarding playing time that gives members exclusive use of golf course on Thursdays, and on Saturday, Sunday and holiday mornings.

¶9 Steve Zirko resigned his voting membership on September 25, 1992. As a result, Ashmore's status as an "associate" member ended. Ashmore applied for "non-resident" member status and was accepted. In that status, she was entitled to play golf at "any time reserved for regular members." On September 26, 1994, Ashmore voluntarily resigned her membership with Hilands.

¶10 Ashmore's complaint of gender discrimination before the Human Rights Commission referred to incidents which occurred prior to her change in membership status in September of 1992 and her ultimate resignation from Hilands in 1994. Hearings before the

Human Rights Commission Hearing Examiner occurred between June and August of 1993. On January 4, 1994, the Hearing Examiner issued his Findings of Fact, Conclusions of Law, and Order in favor of Ashmore. On June 13, 1994, the Human Rights Commission affirmed the findings of the Hearing Examiner and ordered Hilands to pay Joan $750 in damages for emotional distress. Furthermore, the Commission enjoined Hilands from engaging in future discriminatory practices and ordered Hilands to create a three-person committee to review its policies and practices, promote greater numbers of female members, and monitor its progress.

¶11 On July 12, 1994, pursuant to § 2-4-702, MCA, Hilands filed a Petition for Judicial Review of the Commission's order. A challenge to the validity of Hilands' appeal was denied by this Court in *Hilands Golf Club v. Ashmore* (1996), 277 Mont. 324, 922 P.2d 469. On remand, Hilands filed a Motion to Dismiss based on its contention that Ashmore lacked standing and her claim was moot.

¶12 On October 23, 2000, the District Court granted Hilands' Motion to Dismiss. On December 14, 2000, Ashmore filed a Notice of Appeal of the District Court's decision. To date, Hilands has neither paid Ashmore her monetary damages in the amount of $750 nor formed the three-person committee ordered by the Commission to undertake certain activities to eliminate and discourage further discrimination.

## STANDARD OF REVIEW

¶13 We first note that Hilands' Motion to Dismiss was filed and granted in the District Court before the Court reached the underlying issues decided by the Human Rights Commission. The basis for Hilands motion was that "the present case is moot, that Respondent Ashmore lacks standing, and that, therefore, vacatur should be entered, vacating the Order of the Montana Human Rights Commission, and that this case should then be dismissed." Therefore, we are reviewing Hilands' Motion to Dismiss. A district court's ruling on whether a justiciable controversy exists is a conclusion of law. *Northfield Ins. Co. v. Montana Ass'n of Counties*, 2000 MT 256, ¶ 8, 301 Mont. 472, ¶ 8, 10 P.3d 813, ¶ 8. We review the district court's conclusions on which its decision is based to determine whether they have been correctly decided. *Ridley v. Guaranty Nat. Ins. Co.* (1997), 286 Mont. 325, 329, 951 P.2d 987, 989.

## DISCUSSION

¶14 Did the District Court err when it considered claims that Ashmore lacked standing and her claim was moot, even though those arguments were made for the first time in the District Court?

¶15 Ashmore contends that the District Court improperly dismissed the order of the Human Rights Commission based on standing and mootness. Ashmore argues that because Hilands knew the facts which gave rise to its standing and mootness claims prior to the contested hearing before the Human Rights Commission, Hilands in effect waived such arguments by not raising them during the administrative process. Ashmore relies on § 2-4-702(1)(b), MCA, of the Montana Administrative Procedure Act and this Court's decision in *Lincoln County v. Sanders County* (1993), 261 Mont. 344, 862 P.2d 1133.

¶16 Hilands maintains that because both standing and mootness are jurisdictional issues, they can be raised at any stage of the proceedings. It relies on *Shamrock Motors, Inc. v. Ford Motor Co.*, 1999 MT 21, ¶ 19, 293 Mont. 188, ¶ 19, 974 P.2d 1150, ¶ 19 ("*Shamrock I*"), and *Shamrock Motors, Inc. v. Chrysler Corp.*, 1999 MT 39, ¶ 9, 293 Mont. 217, ¶ 9, 974 P.2d 1154, ¶ 9 ("*Shamrock II*"). It further contends that not only can standing and mootness be raised, but a court has an obligation to examine its own jurisdiction *sua sponte* at each stage of the proceedings, even if the parties previously waived such issues.

¶17 The District Court concluded that *Lincoln County's* application to the present case was doubtful in light of our decisions in *Shamrock I* and *Shamrock II*. Based on that conclusion, the District Court dismissed the Human Rights Commission order.

¶18 In order to best serve justice and allow parties to have their day in court, we encourage, as a general rule, a liberal interpretation of procedural rules governing judicial review of administrative decisions. *Hilands Golf Club v. Ashmore* (1996), 277 Mont 324, 330, 922 P.2d 469, 473. That being said, a district court's authority to review administrative rulings is constrained by statutes duly enacted by the Montana Legislature. *In re McGurren*, 1999 MT 192, ¶ 12, 295 Mont. 357, ¶ 12 983 P.2d 968, ¶ 12. While it is true that a court has an obligation to consider its own jurisdiction *sua sponte*, a court's jurisdiction to review administrative decisions is statutorily created and limited.

¶19 The Montana Administrative Procedure Act sets forth the procedure for judicial review of contested administrative decisions, like the one in this case. § 2-4-701 to -711, MCA. Section 2-4-702(1)(b), MCA, provides:

> A party who proceeds before an agency under the terms of a particular statute may not be precluded from questioning the validity of that statute on judicial review, *but the parties may not raise any other question not raised before the agency unless it is shown to the satisfaction of the court that there was good cause for failure to raise the question before the agency.* [Emphasis added.]

¶20 When we interpret a statute, we first look to the plain meaning of the words it contains. *Clarke v. Massey* (1995), 271 Mont. 412, 416, 897 P.2d 1085, 1088. Where the language of the statute is clear and unambiguous, the statute speaks for itself and we will not resort to other means of interpretation. *Clarke,* 271 Mont. at 416, 897 P.2d at 1088. Moreover, this Court is required to simply ascertain and declare what is in terms or in substance found in the statute, neither inserting what has been omitted nor omitting what has been inserted. § 1-2-101, MCA.

¶21 A plain reading of § 2-4-702(1)(b), MCA, indicates that a party may question the validity of a statute for the first time on judicial review to the district court. Other than that exception, all other issues must be raised at the administrative level absent good cause. Section 2-4-702(1)(b), MCA, is, itself, a limitation on the district court's jurisdiction to review administrative decisions. This limitation stands in contrast to the original or appellate jurisdiction derived from Article III of the U.S. Constitution and Article VII, Section 4, of the Montana Constitution. Because the Legislature created judicial review of administrative decisions and at the same time limited the scope of review, the general rule that justiciability questions can be raised at any time is not applicable. Therefore, we conclude that standing and mootness claims cannot be raised for the first time on judicial review of an administrative agency decision unless the District Court determines that there was good cause for the party's failure to raise the question before the agency.

¶22 The question presented here was previously considered in *Lincoln County*. In that case, Sanders County argued that because Lincoln County did not raise the issue of standing to the Mining Board, an administrative agency, it could not raise the question before the District Court. We agreed. We held that the Montana Administrative Procedure Act specifically prohibits parties from raising an issue for the first time on judicial review, pursuant to § 2-4-702(1)(b), MCA:

> The District Court determined that Lincoln County had not shown good cause for failure to raise the issue before the agency. A review of the record indicates that the District Court was correct in this assessment.

We conclude that Lincoln County cannot raise on judicial review something it did not raise before the agency itself. Therefore, we hold that the District Court did not err in ruling that Lincoln County could not challenge the standing of Sanders County to object to an administrative decision.

*Lincoln County, 261 Mont. at 351, 862 P.2d at 1138.* While Lincoln County addressed the issue of standing, we conclude that § 2-4-702(1)(b), MCA, applies to all questions, including other justiciability questions like mootness.

¶23 The District Court concluded that *Lincoln County* was inapplicable given this Court's decisions in *Shamrock I* and *II*. In those separate cases, national automobile companies, Ford Motor Company in *Shamrock I* and the Chrysler Corporation in *Shamrock II*, notified Shamrock Motors, Inc., that it intended to terminate its automobile dealer franchise due to Shamrock's unauthorized sale of 80% of its stock without the auto companies' knowledge and consent. The dispute was contested before the Motor Vehicle Division, an administrative agency, which ruled that Ford and Chrysler had good cause. Shamrock filed for judicial review in the district court. Both automobile companies removed the case to federal court, and, while the matter was pending before the Ninth Circuit, Shamrock's franchise relationship with both companies ended. In *Shamrock I*, Shamrock sold the dealership to Brooks Hanna Ford, and resigned as a Ford dealer. *Shamrock I*, ¶ 12. In *Shamrock II*, Chrysler terminated the franchise. *Shamrock II*, ¶ 10. The Ninth Circuit vacated the U.S. District Court's decisions because the court lacked jurisdiction. On remand back to state court, Shamrock filed a renewed petition for judicial review. Both Ford and Chrysler filed motions to dismiss based on mootness and lack of standing, given the fact the franchise relationship no longer existed. The District Court reversed the order of the Motor Vehicle Division without addressing the basis for Ford's and Chrysler's motions to dismiss. On appeal to this Court, we reversed, and held that because mootness is a threshold issue, it must be dealt with prior to addressing the underlying dispute. *Shamrock I*, ¶ 17; *Shamrock II*, ¶ 13. We determined that a matter is moot when due to an event or happening, the issue has ceased to exist and no longer presents an actual controversy. *Shamrock I*, ¶ 19; *Shamrock II*, ¶ 13.

¶24 However, the facts in those cases are distinguishable. In *Shamrock I*, the sale of the dealership from Shamrock to Brooks Hanna occurred *after* the contested administrative hearing. Similarly, in *Shamrock II*, the franchise was terminated by Chrysler *after* the contested administrative hearing. Therefore, the case was made moot by a subsequent event which followed the administrative hearing and good cause would have existed to

raise those issues for the first time on judicial review.

¶25 Here, Hilands knew that lack of standing and mootness claims were viable issues that could be raised before the Human Rights Commission, yet failed to raise them. To allow Hilands to raise those questions for the first time at the District Court would contravene the plain language of § 2-4-702(1)(b), MCA. If, however, an event had occurred after the administrative hearing that raised standing or mootness issues, Hilands presumably would be able to satisfy the court that "there was good cause for failure to raise the question before the agency," pursuant to § 2-4-702(1)(b), MCA.

¶26 Upon review of the record, we conclude that the good cause exception is not present in this case. The record indicates that Hilands was aware of such defenses during the administrative agency proceeding. On the standing issue, Hilands' brief in support of its Motion to Dismiss, on page 28, argues:

> Apart from mootness . . . any standing she may have had to raise that issue evaporated when she lost her associate status and became a non-resident member. She simply is not harmed by the course usage rules of Hilands, because she, as a non-resident member, has all course privileges. This was true at the time of the hearing because she had become a non-resident member by that time.

Hilands concedes a standing argument was available prior to June 2, 1993, the first hearing date before the Hearing Examiner.

¶27 As to the mootness issue, Hilands similarly acknowledges the availability of the argument prior to the hearing on page 24 of its brief:

> Even assuming that this complaint of Ms. Ashmore states an actionable claim under the Montana Human Rights Act, such claim is moot, and was moot at the time the Human Rights Commission heard this matter.

Hilands contends that Ashmore mooted the issues when she lost her "associate" status and became a "non-resident" member in September of 1992, and when she resigned her Hilands membership in September of 1994. Her change in membership status in 1992 occurred prior to the first hearing on June 2, 1993. Therefore, the mootness argument was available, yet Hilands failed to raise it. If Ashmore had resigned her membership in 1994, without a change of membership status in 1992, there may have been good cause to raise

the argument before the District Court for the first time on judicial review. Yet, given the congruent nature of the mootness arguments, both changes in membership status, Hilands could have argued the case was moot before the Hearing Examiner. It did not, and, as a result, waived similar mootness arguments based on a membership status change.

¶28 Therefore, because Hilands failed to raise questions of standing and mootness during the agency proceeding when it could have done so, the District Court erred in its dismissal of the Human Rights Commission order. Because this issue is dispositive, we will not address the other issues of justiciability raised on appeal. We remand to the District Court for further consideration of any substantive issues raised in the Petition for Judicial Review.

¶29 We reverse and remand to the District Court for proceedings consistent with this opinion.

/S/ TERRY N. TRIEWEILER

We Concur:

/S/ JAMES C. NELSON

/S/ W. WILLIAM LEAPHART

/S/ PATRICIA COTTER

Justice Jim Rice dissenting.

¶30 I respectfully dissent.

¶31 The Court holds that the District Court erred in dismissing the claims for lack of standing and mootness, because these grounds were not raised before the agency, citing § 2-4-702(1)(b), MCA. At ¶ 21, the Court describes this statutory provision as a legislatively imposed limitation on the District Court's jurisdiction which "stands in contrast" to the constitutional mandate to hear cases and controversies. I respectfully submit that, while correctly noting the contrast, the Court fails to properly apply the constitutional principle at issue here.

¶32 While the Legislature can limit the jurisdiction of the district court, the Constitution provides a prior limitation. Article VII of the Montana Constitution, like Article III of the United States Constitution, mandates that courts may only hear justiciable cases. We have previously explained that standing is a requirement under this constitutional provision:

> The concept of standing arises from two different doctrines: (1) Discretionary doctrines aimed at prudently managing judicial review of the legality of public acts, [citation omitted]; and (2) doctrines of constitutional limitation in the federal courts drawn from the "cases and controversies" definition of federal judicial power in Article III, United States Constitution and in the Montana courts drawn from the "cases at law and in equity" definition of state judicial power in Article VII, 1972 Montana Constitution.

> . . . .

> From these cases we synthesize that the issue presented for review must represent a "case" or "controversy" within the judicial cognizance of the state sovereignty.

*Stewart v. Board of County Commissioners (1977), 175 Mont. 197, 200-01, 573 P.2d 184, 186. Thus, the Constitution requires that a party have standing before a district court may hear the case.*

¶33 However, the Court turns this principle on its head, holding that the Legislature's enactment of § 2-4-702, MCA, prohibits the district court from applying the constitutional principle of standing in those cases in which the issue was not previously raised before the agency. The Court essentially holds that the requirement of standing can, pursuant to § 2-4-702, MCA, be waived.

¶34 Standing is jurisdictional and can never be waived:

> Plaintiffs argue that the defendant Board is raising the issue of standing for the first time on appeal and that . . . the Board is now precluded from raising this defense. . . . *Objections to standing cannot be waived and may be raised by the court sua sponte. United States v. Storer Broadcasting Co.* (1956), 351 U.S. 192, 197, 76 S.Ct.763, 100 L.Ed. 1081; 6 Wright & Miller, Federal Practice & Procedure: Civil § 1542 at 642-43.

*Stewart, 175 Mont. at 203-04, 573 P.2d at 188 (emphasis added).* The Court's interpretation of § 2-

4-702, MCA, as prohibiting the District Court from applying the standing requirement violates Article VII of the Montana Constitution and elevates legislative enactment over constitutional mandate. The Legislature can no more require courts to hear cases that lack standing than it could require courts to issue advisory opinions. Our Constitution prohibits it.

¶35 This prohibition applies to other justiciability concerns, such as ripeness, feigned or collusive cases, political questions, and, at issue here, mootness. In *Roosevelt v. Montana Dept. of Revenue,* 1999 MT 30, 293 Mont. 240, 975 P.2d 295, we quoted from *Hardy v. Krutzfeldt* (1983), 206 Mont. 521, 526, 672 P.2d 274, 276, explaining that:

> "The judicial power vested in the district courts and the Supreme Court of Montana, by the provisions of the Montana Constitution, extend to such 'cases at law and in equity' as are within the judicial cognizance of the state sovereignty. Article 8, secs. 3, 11, [1889 Montana Constitution.] *By 'cases' and 'controversies' within the judicial power to determine, is meant real controversies and not abstract differences of opinion or moot questions.* Neither federal nor state Constitution has granted such power."
>
> . . . .
>
> We have followed this same principle of judicial restraint since the adoption of our new Constitution.

*Roosevelt,* ¶¶ 47-48 (emphasis added).

¶36 For these reasons, I believe that *Lincoln County* was wrongly decided and should be reversed. Further, I would not apply the statutory prohibition on raising new questions, set forth in § 2-4-702, MCA, to constitutional justiciability requirements. Consequently, I would address the merits of the District Court's order, i.e., whether, under the facts of this case, the claims were properly dismissed on the grounds of standing and mootness.

/S/ JIM RICE