JUSTICE LEAPHART
dissenting.
¶66 Because I believe that the felony-murder statute under which the Appellant was charged is fundamentally defective under the Due Process Clause of the Fourteenth Amendment to the United States Constitution, I dissent.
¶67 Although the Court recites the history of the felony-murder rule,[1] with special reference to the various limitations which courts have imposed upon it in an effort to mitigate some of the more illogical and legally troubling results of its application,[2] the opinion does not, to my mind, properly confront the rationale behind the limitation which the Appellant cites. The merger doctrine precludes assaultive offenses from providing the basis for a charge of felony murder, when the victim of the assault is also the victim of the homicide-that is, when *48 the assault is an ingredient of the homicide, or is included within it in fact, even (in the doctrine’s most robust form) if not in law. See Robert L. Simpson, Application of the Felony-Murder Doctrine Where the Felony Relied Upon is an Includible Offense with the Homicide, 40 A.L.R.4th 1341 (1971). In doing so, the doctrine seeks to prevent the worst results of the felony-murder rule’s having dispensed with a mens rea element for the murder charge. As the Illinois Court of Appeals has explained, “Unless application of the felony-murder rule is limited to cases in which a killing occurs during the commission of a felony consisting of conduct other than that inherent in the killing itself, all deliberate killings and all fatal shootings may be charged as felony murder.” People v. Morgan (Ill.App. 1999), 718 N.E.2d 206, 211. All homicides could be charged as felony murders, because all homicides, by definition, include an initial assault upon the victim. Thus, “the felony that eliminates the quality of the intent must be one that is independent of the homicide and of the assault merged therein ....” People v. Moran (N.Y. 1927), 158 N.E. 35, 36 (Cardozo, C.J.). See also Ragland v. Hundley (8th Cir. 1996), 79 F.3d 702, 705 n.4 (merger doctrine intended “to avoid the prosecution’s bootstrapping a simple homicide to a higher degree of murder without showing the requisite intent”).
¶68 The statute which embodies Montana’s version of the felony-murder rule specifies both simple and aggravated assault as underlying offenses to felony murder. Section 45-5-102(l)(b), MCA. It is thus not subject to a construction that would incorporate the merger doctrine, for where the language of the statute is clear and unambiguous, the statute speaks for itself and we will not resort to other means of interpretation. Moreover, this Court is required to simply ascertain and declare what is in terms or in substance found in the statute, neither inserting what has been omitted, nor omitting what has been inserted. Hilands Golf Club v. Ashmore, 2002 MT 8, ¶ 20, 308 Mont. 111, ¶ 20, 39 P.3d 697, ¶ 20. Nonetheless, the merger doctrine’s focus upon mens rea provides the key to why our felony-murder statute violates the Due Process Clause.
¶69 Section 45-5-102(1), MCA, does not facially require a mens rea element in order to charge murder based on the homicide. The statute reads, in pertinent part:
A person commits the offense of deliberate homicide if: (a) the person purposely or knowingly causes the death of another human being; or (b) the person attempts to commit, commits, or is legally accountable for the attempt or commission of robbery... *49 or any other forcible felony and in the course of the forcible felony or flight thereafter, the person or any person legally accountable for the crime causes the death of another human being.
¶70 This Court has interpreted § 45-5-102(1), MCA, accordingly. In State v. Sunday (1980), 187 Mont. 292, 307, 609 P.2d 1188, 1197, we stated that “[ijntent as such is not an element under the felony-murder rule.... Intent was no longer an issue under the felony-murder statute once it was shown by the evidence that” the defendant committed the underlying felony. In State v. Nichols (1987), 225 Mont. 438, 449-50, 734 P.2d 170, 177, this substantive rule of law was presented as a rule of evidence: “Under the felony-homicide statute, the state has not been relieved of the burden of proving an element of a crime. Rather, the method of proving one of the elements has been changed. The state may substitute proof of the mental state necessary to commit a homicide with proof of the mental state required to commit the underlying felony.” See also Sandstrom v. Montana (1979), 442 U.S. 510, 517, 99 S.Ct. 2450, 2456, 61 L.Ed.2d 39, 46-47; People v. Dillon (Cal. 1983), 668 P.2d 697, 717-18.
¶71 Section 45-5-102(1), MCA, thus defines a distinct offense with its own unique set of elements: an underlying felony and a death deriving from it, with no intent required for the homicide to be charged to the defendant as a murder. See Wayne R. LaFave & Austin W. Scott, Jr., Criminal Law § 7.5 at 622 n.2 (arguing that felony murder is a category separate from intent-to-kill murder). The homicide is the elevating factor for the purposes of both stigma and sanction, the discrimen between the underlying felony and felony murder. For example, the maximum punishment for simple assault under § 45-5-201(2), MCA, is a five-hundred-dollar fine and six months of incarceration in the county jail; aggravated assault is punished under § 45-5-202(2), MCA, by at most a fine of fifty thousand dollars and twenty years’ imprisonment. When either felony is coupled with a death under § 45-5-102(1), MCA, however, the maximum potential penalty is increased to life imprisonment, and the convict is termed a murderer, without the intent element for murder having been proven by the State.
¶72 This plainly violates the Due Process Clause of the Fourteenth Amendment, as that provision has been interpreted by the United States Supreme Court in Morissette v. United States (1952), 342 U.S. 246, 72 S.Ct. 240, 96 L.Ed. 288, and United States v. United States Gypsum Co. (1978), 438 U.S. 422, 98 S.Ct. 2864, 57 L.Ed.2d 854. In Morissette, the Court required that a statute which criminalized the *50 theft of federal property be read to include the mens rea element of intent. In a famous passage, Justice Jackson wrote:
The contention that an injury can amount to a crime only when inflicted by intention is no provincial or transient notion. It is as universal and persistent in mature systems of law as belief in freedom of the human will and a consequent ability and duty of the normal individual to choose between good and evil. A relation between some mental element and punishment for a harmful act is almost as instinctive as the child’s familiar exculpatory “But I didn’t mean to,” and has afforded the rational basis for a tardy and unfinished substitution of deterrence and reformation in place of retaliation and vengeance as the motivation for public prosecution.
Morissette, 342 U.S. at 250-51, 72 S.Ct. at 243, 96 L.Ed. at 293-94.
¶73 In United States Gypsum, furthermore, the Court held that intent is a necessary element in a prosecution for a non-regulatory offense. United States Gypsum, 438 U.S. at 436-38, 98 S.Ct. at 2873-74, 57 L.Ed.2d at 869-70.
¶74 Alternatively, certain language in the Court’s opinion, and in Nichols, seems to frame the felony-murder rule as a conclusive presumption of the defendant’s murderous intent from his intent to commit the underlying felony, retaining intent as an element of the offense of felony murder. The Court writes: “Under the felony-murder rule, Burkhart’s purpose and knowledge to commit felony murder was presumed when he assaulted Ledeau with a hammer, causing LeDeau’s death.” Maj. op., ¶ 41. The Court goes on to quote Nichols for the proposition that intent to commit the underlying felony somehow “supplies the intent” for murder. Maj. op., ¶ 41 (citing Nichols, 225 Mont. at 449, 734 P.2d at 176). If we are to take these statements at face value, the felony-murder doctrine is unconstitutional under Sandstrom, in which the United States Supreme Court held that a conclusive presumption of guilt as to any element of an offense violates the Due Process guarantee.
[Tjhe trial court may not withdraw or prejudge the issue by instruction that the law raises a presumption of intent from an act. ... A conclusive presumption which testimony could not overthrow would effectively eliminate intent as an ingredient of the offense. ... A presumption which would permit the jury to make an assumption which all the evidence considered together does not logically establish would give to a proven fact an artificial and fictional effect. In either case, this presumption *51 would conflict with the overriding presumption of innocence with which the law endows the accused and which extends to every element of the crime.
Sandstrom, 442 U.S. at 522, 99 S.Ct. at 2458, 61 L.Ed.2d at 49-50 (quoting the holding of Morissette, 342 U.S. at 274-75, 72 S.Ct. at 255-56, 96 L.Ed. at 306-07); see also Dillon, 668 P.2d at 716-17 (“[w]e start with the indisputable fact that if the effect of the felony-murder rule on malice is indeed a ‘presumption,’ it is a ‘conclusive’ one”); State v. Ortega (N.M. 1991), 817 P.2d 1196, 1204 (by interpreting felony-murder rule to presume murderous intent from intent to commit underlying felony, “one runs headlong into Sandstrom”).
¶75 When this Court reviews the constitutionality of a legislative enactment, we will presume the statute to be constitutional and will uphold the statute on review except when it is proven to be unconstitutional beyond a reasonable doubt. State v. Folda (1994), 267 Mont. 523, 525-26, 885 P.2d 426, 427. We will, moreover, seek to construe the statute in such a way as to find it constitutional, if possible. State v. Martel (1995), 273 Mont. 143, 148, 902 P.2d 14, 17. In the present context, it seems clear to me that the only way in which to save § 45-5-102(1), MCA, is to construe it to include a mens rea element. This was the approach taken by the New Mexico Supreme Court in Ortega. See also Robbins v. State (1854), 8 Ohio St. 131 (held, that in a statute providing that if any person shall “purposely, and of deliberate and premeditated malice, or in the perpetration, or attempt to perpetrate, any rape, arson, robbery, or burglary ... kill another” such person should be deemed guilty of murder in the first degree, the word “purposely” modified each of the following clauses).
¶76 Unfortunately, I believe that the statute forecloses such an approach. The Ohio statute which that state’s Supreme Court subjected to interpretation was of far looser and more ambiguous structure than is our own. Section 45-5-102(1), MCA, by contrast, unambiguously provides that a defendant may be found guilty of murder upon proof only of his having committed a felony and having caused a death thereby. Section 45-5-102(l)(a), MCA (“the person purposely or knowingly causes the death of another human being; or . . .” (emphasis added)). Out of deference to our coequal branch of government, therefore, I will not attempt to work the sort of violence upon the statute at issue that the necessary interpretation would require.
¶77 The felony-murder rule is based on the ancient idea that the defendant is an evil person who has committed a bad act, and *52 therefore should be held maximally responsible for all the consequences that flow therefrom, whether he intended them in any sense, or not. See Wayne R. LaFave & Austin W. Scott, Jr., Criminal Law 560 (1972). The law once deemed this an adequate arrangement, that a defendant could be punished criminally for results which he may have in no wise intended, and this indifference to the actual culpability of the individual is amply evidenced in the felony-murder rule’s failure to prescribe a mens rea element for a finding of murder-guilt. The law, however, has long since progressed beyond this point, a development reflected in the Due Process jurisprudence of the Supreme Court of the United States.
¶78 Make no mistake: I have no sympathy whatsoever for the Appellant. His actions, besides being horrific in themselves, clearly caused the death of another human being, and he should be held accountable to the full extent of the law. But a charge of deliberate homicide under § 45-5-102(l)(a), MCA, would have been more appropriate and far less constitutionally troubling. No intensity of personal sentiment, however valid and well-intentioned, can strip this defendant, or any other, of the guarantee of Due Process of law. The remarkable procedure for circumventing the principles of Sandstrom, set forth in Nichols and subscribed to today by the Court, is nothing more than a parlor trick, unworthy of this honorable Court and of our system of justice. The principles enshrined in the Due Process Clause call for the repudiation of the felony-murder rule, and an affirmation of the idea of punishment for individual culpability.

 See also People v. Aaron (Mich. 1980), 299 N.W.2d 304; Wayne R. LaFave, Substantive Criminal Law § 14.5(a) (2nd ed. 2003).

 Maj. op., ¶ 35.