

DA 11-0071

IN THE SUPREME COURT OF THE STATE OF MONTANA

2011 MT 192

IN RE THE MARRIAGE OF
HOLLY H. WOLF,

       Petitioner and Appellee,

   and

WALTER WOLF,

       Respondent and Appellant.

APPEAL FROM:    District Court of the Eighteenth Judicial District,
                In and For the County of Gallatin, Cause No. DR-01-142
                Honorable Mike Salvagni, Presiding Judge

COUNSEL OF RECORD:

       For Appellant:

       Leanne M. Schraudner, Schraudner & Hillier, PLLC, Bozeman, Montana

       For Appellee:

       Jason Armstrong, Attorney at Law, Bozeman, Montana

       M. Cris Armenta, The Armenta Law Firm, APC, Los Angeles, California

                   Submitted on Briefs:  July 13, 2011

                               Decided:  August 11, 2011

Filed:

                   _____
                               Clerk

Justice Patricia O. Cotter delivered the Opinion of the Court.

¶1 Walter E. Wolf (Walter) appeals a series of interlocutory orders of the Eighteenth Judicial District Court, Gallatin County, concluding that the Dissolution Agreement executed by Walter and his ex-wife, Holly H. Wolf (Holly), unambiguously obligated Walter to continue paying Holly maintenance despite her remarriage in August 2008. On February 16, 2011, pursuant to M. R. App. P. 4(4)(b), we accepted the District Court's Order granting M. R. Civ. P. 54(b) certification of these interlocutory orders. We now reverse.

## ISSUE

¶2 A restatement of the dispositive issue on appeal is whether the District Court erred in concluding that § 40-4-208(4), MCA, was inapplicable in determining Walter's maintenance obligations under the Dissolution Agreement upon Holly's remarriage. Because this issue is dispositive, we need not reach Walter's other issues raised in the alternative.

## FACTUAL AND PROCEDURAL BACKGROUND

¶3 The relevant facts are undisputed. Holly and Walter married in December 1987, and divorced in 2002. On February 11, 2002, Holly and Walter executed a Dissolution Agreement which was incorporated into the February 12, 2002 dissolution decree. Pertinent to this appeal, Walter agreed to pay Holly spousal maintenance according to the following provisions of the Dissolution Agreement:

> Walt shall pay to Holly as and for her support and maintenance the sum of $4,000.00 per month, commencing February 1, 2002, and continuing monthly thereafter until [their son] graduates from high school or reaches

2

the age of 18, whichever is last to occur. Upon [their son's] graduation from high school or reaching the age of 18, whichever is last to occur, Walt shall begin paying Holly $6,000.00 per month as maintenance until Holly's death. The monthly support shall be payable on the 1st day of each month by direct deposit. Walt's obligation for support under this paragraph shall terminate upon the death of Holly. In the event Holly shares a residence with an individual with whom she is having an intimate relationship for over a six-month period, the maintenance shall be reduced by $2,00[0].00. However, if such relationship shall cease, then six (6) months after such cessation, the amount of maintenance will be reinstated to $6,000.00 per month. Should Walt pre-decease Holly, Walt's obligation to Holly under this paragraph is secured by Walt's obligation under the life insurance paragraphs as stated in ¶ 8 [of this Dissolution Agreement].

\*        \*        \*

It is the intention of the parties that all amounts payable as maintenance to Holly under the aforementioned paragraph shall constitute alimony payments which are imposed upon and incurred by Walt under a written instrument within the meaning of § 71 of the Internal Revenue Code . . . . The parties agree that the support payments to Holly required under this paragraph shall not be modifiable. It is the specific intent and agreement of the parties that maintenance be contractual and non-modifiable, and that the Court shall not have jurisdiction to modify the terms and conditions as set forth.

¶4      In July 2008, Holly began cohabiting with Joseph Loftis (Joseph). On August 17, 2008, Holly and Joseph married. Walter discontinued making maintenance payments to Holly in September 2008. Holly did not initially contest Walter's termination of maintenance payments, but did so after she filed to invalidate her marriage to Joseph.

¶5      In March 2009, Holly told Walter that she and Joseph were divorcing. On April 16, 2009, Holly filed a Verified Petition for Declaration of Invalidity of Marriage, arguing that she was induced to marry Joseph. Walter sought to intervene in the action on the basis that a retroactive decree of invalidity could affect his obligation to make

3

maintenance payments to Holly, but his motion was denied by the District Court, a ruling we affirmed. *In re Marriage of Loftis*, 2010 MT 49, 355 Mont. 316, 227 P.3d 1030.

¶6 In the meantime, Holly and Joseph entered into a settlement agreement providing for, among other things, the distribution of property and debt. In the agreement, Holly and Joseph stipulated that they each claimed the other party improperly induced the other to marry. On July 9, 2009, the District Court entered an order declaring the marriage between Holly and Joseph invalid "effective as of the date of the parties' marriage."

¶7 In October 2009, Holly filed a motion for partial summary judgment asserting that Walter's maintenance obligation was reinstated after Holly and Joseph stopped living together and arguing Walter was in arrears as of September 2008, when he stopped making maintenance payments. Following extensive litigation, including several motions regarding discovery unrelated to this issue, the District Court ruled on Holly's motion for partial summary judgment on March 22, 2010. The court concluded that § 40-4-208(4), MCA, was inapplicable, and that, under the Dissolution Agreement, Holly's marital status did not affect Walter's obligation to make maintenance payments. Subsequently, on July 9, 2010, the District Court determined that no genuine issues of material fact remained as to spousal maintenance, and concluded that Walter owed Holly for past, present, and future maintenance payments in an amount certain. Walter timely appeals.

**STANDARD OF REVIEW**

¶8 We review de novo a district court's ruling on summary judgment, applying the same M. R. Civ. P. 56(c) criteria as does a district court. *In re Estate of Harmon*, 2011 MT 84, ¶ 14, 360 Mont. 150, 253 P.3d 821. The moving party has the initial burden of

4

establishing the absence of a genuine issue of material fact and entitlement to judgment as a matter of law. *Harmon*, ¶ 14. Whether the movant is entitled to judgment as a matter of law is a legal conclusion that we review for correctness. *Peterson v. Eichhorn*, 2008 MT 250, ¶ 13, 344 Mont. 540, 189 P.3d 615.

## DISCUSSION

¶9 *Did the District Court err in concluding that § 40-4-208(4), MCA, was inapplicable in determining Walter's maintenance obligations under the Dissolution Agreement?*

¶10 At issue is the interpretation of § 40-4-208(4), MCA, and whether it applies to the Dissolution Agreement executed by Holly and Walter on February 11, 2002. Section 40-4-208(4), MCA, states that "[u]nless otherwise agreed in writing or expressly provided in the decree, the obligation to pay future maintenance is terminated upon the death of either party or the remarriage of the party receiving maintenance."

¶11 When interpreting a statute, we first look to the plain meaning of its words. *Hendershott v. Westphal*, 2011 MT 73, ¶ 20, 360 Mont. 66, 253 P.3d 806 (citing *In re Marriage of Christian*, 1999 MT 189, ¶ 12, 295 Mont. 352, 983 P.2d 966). "Where the language of a statute is clear and unambiguous, the statute speaks for itself and we will not resort to other means of interpretation." *Signal Perfection, Ltd. v. Rocky Mt. Bank-Billings*, 2009 MT 365, ¶ 16, 353 Mont. 237, 224 P.3d 604 (quoting *Hilands Golf Club v. Ashmore*, 2002 MT 8, ¶ 20, 308 Mont. 111, 39 P.3d 697). It is not this Court's role to insert what has been omitted or omit what has been inserted. Section 1-2-101, MCA.

¶12 On appeal, Walter argues that the plain meaning of § 40-4-208(4), MCA, is unambiguous and, therefore, his obligation to pay maintenance payments to Holly

terminated when she married Joseph in August 2008. His argument is premised on the fact that the Dissolution Agreement did not expressly provide that Walter would make continuous maintenance payments even if Holly remarried. Holly counters that the maintenance payments terminate *only* upon her death because the conjunctive "or" in § 40-4-208(4), MCA, allows the parties to choose which event—death of a party or remarriage of a party—terminates maintenance payments. Holly's interpretation is inconsistent with the canons of statutory interpretation and unsupported in our precedent.

¶13　The plain language of § 40-4-208(4), MCA, is unambiguous. Absent an express written agreement to the contrary, a party's maintenance obligations automatically terminate if (1) either party dies *or* (2) the party receiving the maintenance payments remarries. Because the word "or" connotes a disjunctive, only one of the separately stated factors must exist to terminate the maintenance obligations. *See Doe v. Cmty. Med. Ctr., Inc.*, 2009 MT 395, ¶ 35, 353 Mont. 378, 221 P.3d 651. Thus, should parties wish to contract around this statute, they must so state "in writing or expressly provide in the decree" for either or both of these separately stated factors—death of a party and remarriage of the party receiving maintenance payments.

¶14　Here, the Dissolution Agreement expressly addresses only the first of the two separate events set forth in § 40-4-208(4), MCA. In the case of death, the Agreement limits termination of maintenance payments to Holly's death; if Walter predeceases Holly, her maintenance payments continue to be paid through a life insurance policy described in the Dissolution Agreement. This is not disputed. However, the subject of this appeal is whether the express terms of the Dissolution Agreement address the second

event set forth in § 40-4-208(4), MCA, the remarriage of the recipient of the maintenance payments. We conclude it does not, and, as explained in detail below, we therefore hold that Holly's marriage to Joseph in August 2008 automatically terminated Walter's maintenance obligations.

¶15 Construction and interpretation of settlement agreements, including dissolution agreements, is a question of law. *In re Szafryk*, 2010 MT 90, ¶ 23, 356 Mont. 141, 232 P.3d 361. The District Court concluded that § 40-4-208(4), MCA, is inapplicable because the Dissolution Agreement contained a non-modification clause. However, we have long held that laws existing at the time of the formation of a contract become part of that contract. *See State ex rel. Bullock v. Philip Morris, Inc.*, 2009 MT 261, ¶ 16, 352 Mont. 30, 217 P.3d 475 (citing *Earls v. Chase Bank of Texas*, N.A., 2002 MT 249, ¶ 12, 312 Mont. 147, 59 P.3d 364 ("We first articulated this principle in *Snider v. Yarbough*, 43 Mont. 203, 207, 115 P. 411, 413 (1911), stating that 'parties will be presumed to have contracted with reference to the law in force.' ")); *Wiard v. Liberty Northwest Ins. Corp.*, 2003 MT 295, ¶ 20, 318 Mont. 132, 79 P.3d 281. Moreover, we previously addressed this precise issue in *In re the Marriage of Cortese*, 2008 MT 28, 341 Mont. 287, 176 P.3d 1064 wherein we held that despite a non-modification provision in a dissolution agreement, "[f]or maintenance to continue after the receiving party remarries, a written separation agreement or a court decree must include an express provision that maintenance will not terminate on remarriage of the party receiving maintenance." *Cortese*, ¶ 12.

¶16 Section 40-4-208(4), MCA, existed in its current form when the Dissolution Agreement was formed and, therefore, was implicitly incorporated into the Dissolution Agreement. The Dissolution Agreement does not expressly provide that maintenance payments would continue in the event Holly remarried. By the plain language of § 40-4-208(4), MCA, Walter's maintenance obligation to Holly terminated by operation of law upon Holly's marriage to Joseph. The District Court erred in concluding otherwise.

¶17 Finally, Walter challenges Holly's contention that the cohabitation provision in the Dissolution Agreement encompassed remarriage, and therefore, the Dissolution Agreement did expressly address remarriage. We disagree with Holly. Cohabitation is not synonymous with marriage. The two situations are treated differently under Montana law, and specifically with regard to spousal maintenance payments. *See In re Marriage of Bross*, 256 Mont. 174, 180, 845 P.2d 728, 731 (1993) ("cohabitation is not subject to § 40-4-208(4), MCA, which provides for the automatic termination of maintenance upon the *remarriage* of the recipient spouse." (Emphasis added.)); *see also In re Marriage of Brown*, 283 Mont. 269, 275, 940 P.2d 122, 125-26 (1997) (cohabitation alone is not a substantial change in circumstances making a spousal maintenance award unconscionable). It is undisputed that Holly remarried in August 2008. And, while the Dissolution Agreement does address cohabitation, it does not expressly address remarriage. Therefore, § 40-4-208(4), MCA, applies.

¶18 Finally, although it is undisputed that Joseph and Holly's marriage was ultimately declared invalid, the legal consequence of that declaration as it relates to Walter's

8

maintenance obligations was not raised by either party in District Court or this Court. We therefore do not reach this issue, nor is our Opinion intended to resolve it in any fashion.

## CONCLUSION

¶19　For the foregoing reasons, we hold that the District Court erred in concluding that § 40-4-208(4), MCA, was inapplicable to the Dissolution Agreement executed by Walter and Holly in February 2002.　Therefore, we conclude that Holly's marriage to Joseph in August 2008 terminated Walter's maintenance obligation to Holly pursuant to the plain language of § 40-4-208(4), MCA.　Our determination here reverses the District Court's March 22, 2010 order and vacates all related orders regarding spousal maintenance only to the extent they are inconsistent with this Opinion.

¶20　Reversed and remanded.

/S/ PATRICIA COTTER

We concur:

/S/ JAMES C. NELSON
/S/ BETH BAKER
/S/ MICHAEL E WHEAT
/S/ JIM RICE


Chief Justice Mike McGrath, dissenting.

¶21　I dissent from the majority's disposition of this case.

¶22　The majority holds that the pivotal issue in this case is whether § 40-4-208(4), MCA, applies.　Opinion, ¶¶ 2, 16.　The majority concludes that the statute applies and that Holly's marriage to Loftis terminated Walter's obligation to pay maintenance to her.

9

¶23 However, § 40-1-402(5), MCA, provides that a declaration of marriage invalidity may be retroactive to the date of the marriage. I conclude, because the marriage to Loftis was invalidated and specifically made retroactive to the date of the marriage, § 40-4-208, MCA, does not direct the outcome of this case.[1]

¶24 When a marriage is declared invalid, "in the eyes of the law the marriage is deemed as having never occurred, regardless of whether the decree of invalidity is declared retroactive or nonretroactive." *In re Marriage of Williams*, 208 Mont. 252, 255, 677 P.2d 585, 586 (1984). But § 40-1-402(5), MCA, does "have an effect on the rights of the parties to the recent marriage and other third persons, depending on whether the decree of invalidity is declared nonretroactive or retroactive." *Marriage of Williams*, 208 Mont. at 255, 677 P.2d at 586.

¶25 In *Marriage of Williams* this Court considered the effect of § 40-1-402(5), MCA, on the prior maintenance obligation of a divorced spouse. This Court adopted a rule announced by the Utah Supreme Court in *Ferguson v. Ferguson*, 564 P.2d 1380 (Utah 1977), that whether a decree of invalidity of the second marriage reinstates a prior obligation of maintenance is a matter left to the sound discretion of the district court, based upon the equity of the situation. *Marriage of Williams*, 208 Mont. at 256, 677 P.2d at 587.

---

[1] As noted by the majority, the parties, inexplicably, have failed to discuss the impact of the declaration of invalidity and the application of § 40-1-402(5), MCA. Because of the clear impact of these provisions of Montana law to the undisputed facts of this case, I would address this issue.

10

¶26 I would construe and apply these authorities to hold that § 40-4-208(4), MCA, did not automatically terminate Walter's obligation to pay maintenance to Holly, and that further proceedings before the District Court are required to make a determination under *Marriage of Williams* as to whether equity requires a continuation or a discontinuation of Walter's maintenance obligation.

¶27 I would remand to the District Court for further proceedings in light of § 40-1-402(5), MCA, and *Marriage of Williams*.


/S/ MIKE McGRATH


Justice Brian Morris joins in the foregoing dissenting Opinion of Chief Justice McGrath.


/S/ BRIAN MORRIS

11