Kathryn D. BABCOCK, Plaintiff,

v.

Postmaster General Anthony
FRANK, Defendant.

No. 89 Civ. 1479 (RWS).

United States District Court,
S.D. New York.

Jan. 16, 1990.

Lampert, Lampert & Aretakis, New York City (John A. Aretakis, of counsel), for plaintiff.

Otto G. Obermaier, U.S. Atty., S.D.N.Y., New York City (Steven C. Bennett, Asst. U.S. Atty., of counsel), for defendant.

## OPINION

SWEET, District Judge.

Defendant Postmaster General Anthony Frank has moved pursuant to Rule 12(b)(1)

and (6), Fed.R.Civ.P., for an order dismissing the Title VII action brought by plaintiff Kathryn D. Babcock ("Babcock") or, alternatively, for an order under Rule 56 granting defendant summary judgment. For the reasons set forth below, the motions for dismissal and summary judgment are denied. Defendant's request for additional relief denying Babcock's Title VII claim insofar as it seeks compensatory and punitive damages is granted.

*Prior Proceedings*

This lawsuit, which seeks relief for sexual harassment and retaliatory treatment pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. Section 2000e et seq., was instituted by Babcock in March 1989. A second amended complaint was filed in May 1989, which defendant moved to dismiss by its motion of July 28, 1989. After briefing, the motion was heard and fully submitted on October 13, 1989.

*Facts* [1]

Babcock is an employee of the United States Postal Service ("USPS"), of which Postmaster Frank is the chief officer. She was hired in January 1986 as a clerk typist and a postal operations associate. Babcock's assigned station has varied but the locale most relevant to this action is the Poughkeepsie, New York branch of the USPS.

The law suit concerns a series of events alleged to have taken place at the Poughkeepsie office over the thirteen month period from April 1988 until the suit was instituted in March 1989. Babcock claims that during this term of employment she was subjected to sexually harassing conduct, principally by her former USPS supervisor Anthony Musso ("Musso"), and that in retaliation for her complaints about such harassment, she has suffered discriminatory treatment from her USPS superiors with respect to job assignments, work evaluations and opportunities for promotion.

The complaint pleads that commencing sometime in April 1988, Musso, a senior postal operations specialist who had participated in hiring Babcock and subsequently acted as her direct supervisor, made unwelcome sexual advances on Babcock (including unconsented and forcible touches, squeezes and kisses) and threatened Babcock with loss of her job if she did not submit to these sexual advances.

Although not stated in the complaint, the parties do not dispute that for a year or more prior to April 1988, Babcock and Musso had conducted a consensual physical relationship. The parties also agree that the relationship between Babcock and Musso continued in some fashion until July 4, 1988, when Babcock terminated it. She contends that prior to that time she sought to end the relationship, and apparently claims that, at least in certain instances, advances made by Musso during the period between April and July were unwelcome but that she succumbed to them, on occasion, because of Musso's threats, including job-related threats and promises.

Babcock also contends that in April she was subjected to harassment or mistreatment by other male USPS employees and that rather than attempting to discourage such conduct by taking effective disciplinary action against those employees, her supervisors discriminatorily issued her a "Letter of Warning ("LOW") in lieu of seven day suspension," asserting insubordination on her part. Babcock met with an EEOC counselor concerning these incidents in May 1988 right after she was issued the LOW, and subsequently in August filed an EEOC charge in which she alleged that by issuing the LOW, her supervisors had unfairly retaliated against her and sought to intimidate her for standing up for her civil rights.[2]

---

**1.** The facts here set forth are as alleged in the complaint, as supplemented by Babcock's affidavit and by certain exhibits submitted or adopted by Babcock for purposes of this motion, consisting chiefly of materials gathered in connection with the EEOC investigations of Babcock's charges. Any additional facts relied on by Frank to support his motion shall be noted as relevant to the discussion.

**2.** According to Babcock, the April incidents occurred as follows. On April 15, 1988 a subordinate male employee used abusive language toward her, refused her direct order, and threw a box of pencils at her. Feeling physically

From July until September Babcock was posted to a separate USPS facility in Poughkeepsie and apparently had little or no contact with Musso and no trouble with other USPS employees. Upon Babcock's return in September to the unit in which she worked under Musso's supervision, however, Musso again allegedly subjected her to harassment. According to Babcock, Musso made repeated entreaties and threats to her, at work, pressuring her to resume their relationship; Babcock rejected his advances and strove to dissuade him from continuing to inquire into her personal life; and Musso, in reaction to her resistance, threatened her that he would not take such treatment from a woman and that if she did not watch out he would destroy her career.

Musso followed up on his threat on September 19, 1988, when he issued Babcock a "Letter of Warning in lieu of a fourteen day suspension" predicated on an incident of insubordination. The LOW was issued after Musso consulted with his supervisors at the USPS facility, Peter Morrissey and Robert Corcoran, concerning what disciplinary action could appropriately be taken. Upon receiving the letter, Babcock told Musso that whatever he did to her, she would not go to bed with him and that she intended to defend herself by airing the truth. She then immediately complained to Corcoran and Morrissey about Musso's conduct and was advised by them to submit a written grievance.

Babcock did so, sending Corcoran and Morrissey, as well as Robert Smith, the USPS director of employee and labor relations for the area, a written statement on September 22, 1988. That same date Babcock met with the USPS EEO counselor to set forth her grievance and on October 4, 1988, she initiated an EEOC complaint alleging discrimination in the form of sexual harassment by her supervisor Musso.

At the time Babcock filed this charge no action had been taken on her first EEOC charge, with respect to which the USPS EEO counselor had met with Babcock about a month and a half before and which, as noted, had also involved the issuance of a LOW against Babcock which she claimed to have been improperly lodged by her supervisors for discriminatory and retaliatory reasons. In her second EEOC charge, as she had before, Babcock requested that the LOW be purged from the files. In her letters to Morrissey and Corcoran Babcock also noted the necessity of working separately from Musso and her desire to continue working at the USPS in her position as a postal operations associate.

Shortly after Morrissey and Corcoran received the written statement setting forth her grievances, Babcock and Musso were each given temporary reassignments resulting in their workplace separation. Following further investigation, on October 24, 1988, Musso was given written notice of his proposed removal from the Postal Service for violation of USPS policy on sexual harassment. The notice indicated that Musso had issued a LOW against Babcock, based on an incident he had fabricated, for the purpose of harassing her in retaliation for her having cut off their relationship.[3]

Prior to Musso's proposed removal, Babcock claims that she was advised by Cor-

---

threatened by such conduct, Babcock complained to her supervisors, including Musso, indicating she had a genuine concern for her safety. Shortly thereafter, on April 25, 1988, an anonymous harassing note (stating Babcock ought to wear a hairpiece) was left on Babcock's desk. When Musso and the others determined that no formal action should be taken with respect to the first incident, Babcock decided to report the incident to the State Police "for protection." That act resulted in the issuance of the disciplinary letter and her temporary removal from her duty station. No disciplinary action was taken against the pencil-throwing employee and the male USPS employee who later admitted to authorship of the note received a LOW

with, Babcock says, management's written understanding that Babcock should have taken the note as a joke.

3. The proposed removal was confirmed by letter of December 5, 1988. After appealing the decision to the Merit Systems Procedure Board, Musso settled the appeal on June 28, 1989 by agreeing to a three grade demotion in lieu of removal and to assignment to another facility. In addition, Musso was placed on a non-pay, non-duty status during December 17, 1988 to July 3, 1989 that was deemed a period of suspension without pay.

coran in early October of management's decision to detail her out of her postal operations associate position and into another position which she did not request and which was outside her career path. She states that Corcoran and Morrisey proposed this job assignment in reprisal for her not tolerating sexual harassment from their co-worker Musso; that Morrissey had told her that if she filed EEOC charges against Musso she would be hurting her career and would not be promoted; and that because of her complaints about Musso and others, Corcoran had unfairly concluded that she had "interrelationship problems" and should not be posted to assignments that involved working with male USPS employees.

The complaint does not indicate what specific job postings ensued thereafter, but does generally allege that because of her filing of the prior EEOC charges, USPS management transferred Babcock from her postal operations associate position, demoted her to positions with lesser or unrelated responsibilities, prohibited her from working with males, and denied her consideration for a promotional posting to the position of senior postal operations specialist.

Following Corcoran's selection on or around October 27, 1988 of another USPS employee for detail to that position (which Musso had been made to vacate), Babcock again met with the EEO counselor. In her interview, she indicated that in reprisal for her prior (and still pending) EEOC charges of harassment against Musso, she had been refused consideration by Corcoran and Morrissey for assignment to the vacant senior postal operations specialist position. Babcock further indicated that she had met with Corcoran to ask him why she had been passed over for the promotion and had been told that Ms. D. Simmons (the person who had been promoted to the position) had more "mail flow" experience. When Babcock asked Corcoran whether he had reviewed her qualifications, Corcoran allegedly replied that he had not. In her affidavit, Babcock contends she was more qualified than Simmons and was in fact the person who had trained Simmons for most of the tasks relating to the position. Bab-

cock filed her third formal EEO charge on December 13, 1988, based upon these allegations of retaliation, and requested in her charge that she be detailed to the position of senior postal operations specialist.

On unstated dates, the USPS purged both of the LOW's from Babcock's records as she had requested in her first two EEO charges. On January 17, 1989, the EEOC issued a decision on Babcock's second charge, dismissing the charge without making findings as to whether she had suffered discrimination. The grounds for dismissal were that "any harm you may have suffered has been corrected and you have been made whole." Notice of Babcock's right to sue ("RTS") within thirty days was contained in this letter. Two weeks later, on January 26, 1989, the EEOC issued its decision on Babcock's first charge, again rejecting the complaint without findings as to discrimination because the LOW had been purged and thus "any harm suffered had been corrected." Notice of her right to sue was also contained in this letter.

On March 3, 1989, Babcock instituted this suit. Shortly thereafter, by decision of March 17, 1989, the EEOC dismissed Babcock's third charge pursuant to its policy of refraining from investigating charges upon which suit had been filed.

In papers and supporting exhibits submitted in opposition to defendant's motion, Babcock asserts she has continued to suffer retaliation from USPS management for making EEOC charges in that she has received unfair work performance evaluations from Morrissey and other USPS supervisors. Those allegations, which fall within the general statement in the complaint that Babcock has suffered reprisal for her EEOC complaint, were for reasons not explained by Babcock set forth in a fourth EEOC charge filed on June 29, 1989. For equally unexplained reasons, Babcock's fourth complaint, unlike the third, was accepted by the EEOC for investigation on August 4, 1989 and no final decision been rendered to date thereon.

*Exhaustion of Administrative Remedies*

█ Title VII provides that an employee may bring an action against her federal

employer only after the EEOC or other agency has taken "final action" on her administrative complaint or has failed to take action for 180 days. 42 U.S.C. § 2000e–16(c). A Title VII suit is barred if claimant's administrative remedies have not been exhausted. *Stewart v. Immigration & Naturalization Services,* 762 F.2d 193, 197–98 (2d Cir.1985). USPS argues that Babcock's complaint therefore must be dismissed because Babcock filed this action while her third EEOC charge was still pending.

■ As applied in this circuit, the exhaustion of remedies requirement does not extend to unexhausted claims when they are "reasonably related" to a charge filed with the EEOC upon which final action has been taken. While one RTS letter does not constitute "open license to litigate any claim of discrimination against an employer, [it] does permit a court to consider claims of discrimination reasonably related to the allegations in the complaint filed with the EEOC, 'including new acts occurring during the pendency of the charge before the EEOC.'" *Kirkland v. Buffalo Board of Education,* 622 F.2d 1066, 1068 (2d Cir.1980) (quoting *Oubichon v. North American Rockwell Corp.,* 482 F.2d 569, 571 (9th Cir.1973)).

■ No "open license" is needed for Babcock to survive USPS' exhaustion challenge. Babcock's third EEOC charge concededly arose during the pendency of the EEOC's investigation of her first and second charges of sexual harassment and sex discrimination and is reasonably related to them. Filed only two months after the second charge, its focus is events which occurred within a three week period of the filing of that charge. Explicitly predicated upon the sexual harassment by Musso that Babcock had made the subject of her second charge, the third charge, like the first, asserted that USPS management had retaliated against Babcock for standing on her civil rights. In similar contexts, retaliation claims have been found reasonably related to prior charges of discrimination. *See Kirkland,* 622 F.2d at 1070 (retaliation claim held reasonably related to earlier

EEOC charge based on racial discrimination); *Keeley v. Citibank, N.A.,* 711 F.Supp. 157, 160–61 (S.D.N.Y.1989) (claim of retaliatory transfer held reasonably related to failure to promote charge filed with EEOC). *Cf. Almendral v. New York Office of Mental Health,* 743 F.2d 963, 967 (2d Cir.1984) (series of failure to promote allegations based on racial discrimination held reasonably related).

USPS' reliance upon *Stewart* to suggest to the contrary is unpersuasive. The plaintiff in *Stewart* sought to litigate a retaliatory suspension claim for which no EEOC charge had ever been filed. The employee's suspension had arisen in connection with criminal proceedings unrelated to his workplace and the suspension occurred over four years after he had filed his original EEOC charge of racial discrimination. In direct contrast to *Stewart,* Babcock's claims all relate to allegations of sexual harassment and discrimination occurring within the workplace, all within a relatively short period of her employment, and the unexhausted allegations arose—and were brought to the attention of the EEOC— while the EEOC's investigation of earlier charges was still underway.

The latter point concerning EEOC notice is of some moment. This is not an instance in which allegations were never presented to the EEOC in order to sidestep administrative investigation. To the contrary, Babcock brought her retaliation charge to the attention of the same EEO officer to whom she had only a few weeks before outlined her prior charges of harassment. The EEOC had notice of the related nature of the new allegations and might reasonably have investigated them within its then ongoing investigation. Instead, it employed a piecemeal approach, treating each charge in isolation from the others.

The agency's failure to consolidate Babcock's serial allegations meant that Babcock had little choice but to initiate suit—or forfeit her right to sue—on her original charges, prior to the EEOC's completion of its investigation on her third charge. Under such circumstances, exhaustion doctrine should not be applied rigidly to force

piecemeal litigation of Babcock's related federal claims. Taking due notice of the Second Circuit's warning against the restrictive and inflexible application of the exhaustion of administrative remedies doctrine, *see Weise v. Syracuse University,* 522 F.2d 397, 412 (2d Cir.1975), the charges made by Babcock are determined to be reasonably related to one another and USPS's motion to dismiss on grounds of failure to exhaust administrative remedies is denied.

*Statute of Limitations Requirements Under 42 U.S.C. § 2000e–16(c)*

■ USPS further contends that Babcock's complaint is time-barred. Title VII actions by federal employees must be filed in federal district court within thirty days of the plaintiff's receipt from the EEOC of a RTS letter. 42 U.S.C. § 2000e–16(c). Failure to file a Title VII claim within the thirty day statutory deadline is a jurisdictional bar to suit. *Stewart v. Immigration & Naturalization Services,* 762 F.2d 193, 198 (2d Cir.1985); *Brown v. GSA,* 507 F.2d 1300 (2d Cir.1974), *aff'd,* 425 U.S. 820, 96 S.Ct. 1961, 48 L.Ed.2d 402 (1976); *Bell v. VA Hospital,* 826 F.2d 357 (5th Cir.1987); *Jackson v. Thomas,* 88 Civ. 2919, 1989 WL 46595 (S.D.N.Y. April 2, 1989).

As noted above, Babcock received a RTS letter on her first EEOC charge on February 3, 1989 and filed this federal court action on March 3, 1989. The action thus was instituted within the 30 day filing period, facially satisfying the statute of limitations. USPS nevertheless contends that Babcock's lawsuit is untimely because Babcock received a RTS letter on her *second* EEOC charge 41 days before she instituted this action.

The filing of duplicative charges in an effort to circumvent the statute of limitations has been prohibited in this and other circuits. *See Lo v. Pan Am,* 787 F.2d 827, 828 (2d Cir.1986), *Cleveland v. Douglas Aircraft Co.,* 509 F.2d 1027, 1029 (3rd Cir. 1978), *Dowdell v. Sunshine Biscuits, Inc.,* 90 F.R.D. 107, 115–16 (M.D.Ga.1981), *aff'd,* 673 F.2d 1343 (11th Cir.1982). As explained in *Lo v. Pan Am,* were the rule "[o]therwise, the time limitations ... would

be meaningless because potential plaintiffs could evade those requirements simply by seeking additional right to sue letters whenever they please." *Id.* at 828.

That apparently was the circumstance in *Lo,* in which the complaint was dismissed notwithstanding its timeliness with respect to one EEOC charge, because that EEOC charge itself did little more than reiterate the facts that had been alleged already in a prior filed charge that was no longer within the limitation period. *Id.* Here, however, there is no question of evasion of the time requirements by the filing of a subsequent duplicative charge. This lawsuit is timely with respect to the very first of the EEOC charges that Babcock submitted and the later filed charges do not duplicate it. Whatever reasons Babcock had for filing serial EEOC charges, extending the statute of limitations could not have been among them.

■ Accordingly, there is no jurisdictional bar to consideration of this action. Babcock's lawsuit, filed within thirty days of receiving a RTS letter on her first EEOC charge of harassment is timely, notwithstanding her earlier receipt of the RTS letter on her second EEOC charge. The contrary view urged by USPS, if applied to the peculiar facts before the court, would, like the exhaustion argument, foreclose or force piece-meal litigation of closely related charges, depriving the Title VII plaintiff who has in good faith filed several EEOC charges of a meaningful judicial avenue to pursue relief.

*Mootness of Equitable Remedies and the Availability of Damages*

USPS contends that Babcock's complaint should be dismissed as moot because Babcock already has received the equitable remedies she sought in her EEOC charges. USPS further contends dismissal is appropriate because the relief Babcock pursues through this lawsuit—compensatory and punitive damages—is unavailable in Title VII actions.

■ It is well established that "neither compensatory nor punitive damages are re-

coverable under Title VII." *Carrero v. New York City Housing Authority*, 890 F.2d 569, 581 (2d Cir.1989) (citing *Shah v. Mt. Zion Hosp. & Medical Center*, 642 F.2d 268, 272 (9th Cir.1981); Annotation, *Award of Compensatory Damages, Aside from Backpay or Frontpay, for Violations of Title VII*, 48 A.L.R.Fed. 338 (1980) (Supp.1988)); *see also Grandison v. U.S. Postal Service*, 696 F.Supp. 891, 896 (S.D. N.Y.1988); *O'Brien v. King World Productions, Inc.*, 669 F.Supp. 639, 641 (S.D. N.Y.1987). Unlike claims under § 1983, for which compensatory damages are available, *see Carrero*, at 581, employee remedies under Title VII are limited to backpay, frontpay, reinstatement or other equitable or declaratory relief. *See McPartland v. American Broadcasting Companies, Inc.*, 623 F.Supp. 1334, 1344 (S.D.N.Y.1985).

■ In this action, Babcock makes no request for equitable or declaratory relief. Instead, she demands $15 million for damages and another $15 million in punitive damages. Although not expressly labeled "compensatory," the former $15 million demand appears to represent recovery sought for pleaded injuries such as mental anguish, physical discomfort, and slander to her reputation. The demand accordingly shall be stricken to the extent it seeks compensation for such injuries, as opposed to back pay. The punitive damages request shall also be stricken, as such damages are as a matter of law unavailable in Title VII actions. *See Carrero*, 890 F.2d 569, 581.

■ USPS' motion for dismissal on the ground that plaintiff fails to state a claim "upon which relief can be granted" must nevertheless be denied. If a complaint states a case justifying *any* relief within the court's power to grant, the prayer for relief must be disregarded and the action may not be dismissed under Rule 12(b)(6). The question is not whether the relief sought by the plaintiff is available, but whether any relief whatsoever could be granted. *See Doss v. Southern Central Bell Telephone Co.*, 834 F.2d 421, *reh'g denied*, 837 F.2d 1090 (5th Cir.1987) (reversing district court's dismissal of Title

VII action on grounds that compensatory and punitive damages were unavailable under Title VII); *Deary v. Guardian Loan Co., Inc.*, 563 F.Supp. 264, 266 (S.D.N.Y. 1983).

■ Babcock's complaint alleges conduct for which equitable or declaratory relief, although not expressly demanded by Babcock, may be available. While the USPS urges that such relief would be moot, the authority USPS cites for this proposition merely establishes that claims for injunctive relief under Title VII are moot when the party seeking such relief is no longer employed, does not seek reinstatement or has otherwise been afforded injunctive remedies that extinguish the controversy. *See e.g. Christoforou v. Ryder Truck Rental, Inc.*, 668 F.Supp. 294, 301–02 n. 3 (S.D.N.Y.1987) (equitable relief denied as moot in claim for hostile work environment where plaintiff no longer worked for employer and did not seek reinstatement); *Ackerman v. Board of Education*, 387 F.Supp. 76, 83 (S.D.N.Y.1975) (claim of discrimination dismissed as moot for lack of continuing controversy where maternity policy complained of had been amended and plaintiff no longer was employed by school system).

Here there is an ongoing controversy. Babcock continues to work for USPS. She contends USPS management has denied her a promotion and given her unfavorable job performance evaluations in retaliation for her complaints of sexual harassment by Musso. Thus, while the demotion and transfer of Musso, the chief perpetrator of the sexual harassment, means that "there is no reasonable expectation" that the alleged harassment will recur, it cannot be said that interim relief or events "have completely and irrevocably eradicated the effects of the alleged violation[s]." *County of Los Angeles v. Davis*, 440 U.S. 625, 631, 99 S.Ct. 1379, 1383, 59 L.Ed.2d 642 (1979). Moreover, while the LOWs placed in Babcock's files have been purged, the EEOC refused to make findings with respect to whether Babcock in fact had suffered from discriminatory treatment at the hands of Musso. Therefore, declaratory

relief adjudicating that issue may also be available to Babcock. *Cf. Hill v. Berkman,* 635 F.Supp. 1228, 1242–43 (E.D.N.Y. 1986) (declaratory judgment of discrimination denied on grounds of mootness where, in view of absence of continuing employment relationship, there was no ongoing controversy amenable to declaratory relief). Babcock's claims are for these reasons not moot.

*Title VII Sexual Harassment and the Consensual Sexual Relationship*

■ USPS contends that Babcock's claim must be dismissed because Babcock consented to Musso's advances. Relief under Title VII for sexual harassment is predicated, among other things, on a showing that the allegedly harassing conduct is unwelcome. *See Meritor Savings Bank, Inc. v. Vinson,* 477 U.S. 57, 68, 106 S.Ct. 2399, 2406, 91 L.Ed.2d 49 (1986). Recognizing that coercion may take forms subtler than direct physical threats or attacks, the Supreme Court took care in *Meritor* to articulate that the plaintiff alleging harassment need not demonstrate that "her actual participation" was involuntary. It suffices that she show "by her conduct ... that the alleged sexual advances were unwelcome...." *Id.* at 68, 106 S.Ct. at 2406.

■ The parties here agree that Babcock and Musso had a consensual sexual relationship prior to April 1988 and Babcock does not assert that Musso's conduct prior to then gives rise to any Title VII violation. USPS does not attempt to negate by affidavit or otherwise Babcock's pleaded allegations that Musso at times thereafter made physical and verbal sexual advances that were unwelcome, not consented to nor condoned by Babcock nor that Musso told Babcock that he would fire her or prevent her career advancement of USPS if she did not accede to his advances. These allegations, which for present purposes must be taken as true, plainly suffice to establish the element of Babcock's claim that the sexual harassment was unwelcome.

No more persuasive is USPS' contention that the complaint is subject to dismissal because it pleads harassment based not on the "sex" of the employee but rather, predicates it on a prior consensual sexual relationship between supervisor and employee. Defendant relies on *DeCintio v. Westchester County Medical Center,* in which a panel of this circuit determined that Title VII does not extend to favorable disparate workplace treatment based upon a consensual sexual relationship. 807 F.2d 304, 308 (2d Cir.1986), *cert. denied,* 484 U.S. 825, 108 S.Ct. 89, 98 L.Ed.2d 50 (1987). However, the *DeCintio* court decided only that where a male supervisor favored his female paramour over six male applicants in a promotion decision, Title VII provided no relief. *Id.*

USPS overlooks that the male plaintiffs in *DeCintio,* although treated unfairly, could not complain that because they refused sexual favors they were denied job benefits. Without question, they were not victims of sexual harassment. Babcock presents just the opposite scenario. She claims Musso threatened her with destruction of her career at USPS if she did not return his affections and that when she no longer did, she suffered retaliation.

■ Title VII has been held to provide protection against such *quid pro quo* conduct and that protection ought not be withdrawn merely upon a showing that the victim of harassment had in the past entered into a consensual sexual relationship with the perpetrator. While USPS offers *Huebschen v. Dept. of Health & Human Services,* 716 F.2d 1167, 1169, 1172 (7th Cir.1983), for this proposition, in that case plaintiff made no showing that he had been threatened by his supervisor with job-related consequences if he did not continue with or resume their relationship, as Babcock alleges here. As stated in *Keppler v. Hindsdale Township H.S. Dist. 86,* 715 F.Supp. 862, 868 (N.D.Ill.1989), "[t]he [*Huebschen* ] court could not have meant that an employer who has engaged in consensual copulation with an employee may thereafter demand it as a condition of retaining benefits." It need only be added that to the extent that such a conclusion is within the intendment of *Huebschen,* its reasoning is not binding on this court.

The Court of Appeals' decision in *Carrero v. New York City Housing Authority* confirms that an employer who exacts a penalty because of his employees' rejection of his initial sexual advances commits illegal sex-based discrimination cognizable under Title VII. *Carrero*, 890 F.2d 569, 579. To the same logical degree, "[a]n employer who threatens a penalty if the employee will not *continue* the physical relationship is using gender as the basis for job benefits," *Keppler*, 715 F.Supp. at 868 (emphasis added). To assume as a matter of law that the latter is discrimination predicated not on the basis of gender, "but on the basis of the failed interpersonal relationship," *see Keppler*, 715 F.Supp. at 869, is as flawed a proposition under Title VII as the corollary that "ordinary" sexual harassment does not violate Title VII when the employer's asserted purpose is the establishment of a "new interpersonal relationship." Under either scenario, it is the sexually coercive and unwelcome nature of the employer's behavior, directed at a member of the opposite sex, that gives rise to the violation.

The allegations that Babcock's supervisor Musso implored her to love him again and that he couldn't stand seeing her without being intimate with her, when coupled with his contemporaneous threat to destroy her career at the USPS and his subsequent issuance of a disciplinary letter against her, are more than sufficient to raise an inference in a reasonable person that Musso intended to use—and did use—his supervisorial authority to blackmail Babcock into again accepting his sexual advances. Those allegations comprise a claim of *quid pro quo* sexual harassment. Babcock, after ending her relationship with Musso, "had the right, like any other worker, to be free from a sexually abusive environment, and to reject her employer's sexual advances without threat of punishment." *Keppler*, 715 F.Supp. at 869. Nothing in *DeCintio* or *Huebschen* compels dismissal of Babcock's claims on grounds that she previously had engaged in a consensual relationship with Musso.

The final matter to be considered is USPS' suggestion that Babcock fails to state a claim of hostile environment sexual harassment, because she has not alleged offensive behavior "sufficiently severe or pervasive 'to alter the working environment.'" *Vinson*, 477 U.S. at 67, 106 S.Ct. at 2405 (quoting *Henson v. City of Dundee*, 682 F.2d 897, 904 (11th Cir.1982)). *See also Snell v. Suffolk County*, 782 F.2d 1094, 1103 (2d Cir.1986) (applying *Henson* standard to evaluate racially hostile atmosphere); *Lehtinen v. Bill Communications, Inc.*, 1989 WL 38130, 1989 U.S.Dist. LEXIS 3707 (S.D.N.Y.1989) (evaluating whether working environment is poisoned by sexual harassment); *Bennett v. New York City Dep't of Corrections*, 705 F.Supp. 979, 984 (S.D.N.Y.1989) (same).

■ As previously set forth in *Watts v. New York City Police Dep't*, 724 F.Supp. 99, 104 (S.D.N.Y.1989), whether conduct reaches that threshold of severity or pervasiveness is a determination that must be based on the "totality of circumstances," which must promise more than minor "isolated incidents" or "casual comments" that express harassment or hostility. *Snell*, 782 F.2d at 1103. If the allegations suggest that a reasonable person facing the same circumstances would encounter a workplace environment hostile and offensive enough to adversely affect their well-being or work performance, dismissal is inappropriate. *See Bennett*, 705 F.Supp. at 984 (employing reasonable person standard in denying defendant summary judgment on hostile environment claims); *Barbetta v. Chemlawn Services Corp.*, 669 F.Supp. 569, 572 (W.D.N.Y.1987) (same).

■ Here, Babcock, in her complaint and in her affidavit, states that while she finally terminated the relationship with Musso on July 4, 1988, she felt compelled to continue the relationship from some point in April until this time under the pressure of job-related threats by Musso. In addition, she pleads that Musso repeatedly threatened and harassed her in September when she returned to their common worksite that month. Moreover, the USPS, in the course of disciplining Musso, itself indicated in correspondence that his

conduct had subjected Babcock to sexual harassment that had deleteriously impacted upon Babcock's work environment. Clearly, as pleaded, Babcock's allegations could convince a reasonable person that her working environment satisfied the requisite level of severity or pervasiveness set forth in *Vinson*.

### Conclusion

For the above reasons, USPS' motion for dismissal or, in the alternative, for summary judgment must be denied. Babcock's demand for compensatory and punitive damages shall be deemed stricken from the complaint.

It is so ordered.