
DA 06-0609

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2008 MT 46

LISA WILLIAMS,

       Plaintiff and Appellee,

  v.

JOE LOWTHER INSURANCE AGENCY, INC.,

       Defendant and Appellant.

LISA WILLIAMS,

       Plaintiff and Appellee,

  v.

JOE LOWTHER INSURANCE AGENCY, INC.,

       Defendant and Appellant.

JOE LOWTHER INSURANCE AGENCY, INC.,

       Plaintiff, Petitioner and Appellant,

  v.

LISA WILLIAMS,

       Defendant, Respondent and Appellee.

APPEAL FROM:   District Court of the Thirteenth Judicial District,
In and For the County of Yellowstone, Cause Nos. DV 2005-0615
and DV 2005-656
Honorable Susan P. Watters, Presiding Judge

COUNSEL OF RECORD:

    For Appellant:

        John L. Amsden, Beck, Amsden & Ruggiero, PLLC, Bozeman, Montana

    For Appellee:

        Phillip R. Oliver, Oliver & Associates, Billings, Montana

                    Submitted on Briefs:  August 22, 2007

                              Decided:  February 12, 2008

Filed:

                        Clerk

Justice Patricia O. Cotter delivered the Opinion of the Court.

¶1     On July 24, 2006, the District Court of the Thirteenth Judicial District upheld an order of the Montana Human Rights Commission (HRC) which affirmed a Final Agency Decision of the Montana Department of Labor and Industry (Department).  The Department's final decision granted a judgment and damages to appellee Lisa Williams (Williams) based on a complaint for sexual discrimination which she filed against the appellant Joe Lowther Insurance Agency, Inc. (Corporation).  The Corporation now appeals the District Court's decision.  We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

¶2     Joe Lowther (Lowther) became the sole shareholder and owner of the Corporation in late 1995, after the death of his father, Joe Lowther, Sr.  Joe Lowther, Sr. had formed the Corporation in Billings, Montana in 1969, and served as the district manager for Farmers Insurance Group (Farmers).  Lowther assumed his father's position when he took over the Corporation.

¶3     Lowther met Williams in 1997 or 1998 while he was a patient of Heights Eye Care Center in Billings.  Williams worked there as a receptionist.  Lowther was a divorced father of three children.  Williams was married with two children.  Lowther and Williams began a relationship, and sometime in 2001 Lowther approached Williams about coming to work for the Corporation.  Initially she refused, but then accepted his offer in May of 2001.  At the time, two other women worked in the office for Lowther.  In August of 2001, Lowther and Williams entered into a consensual, sexual relationship.  They concealed this affair from Williams' spouse.  By January of 2002, while Williams and

3

Lowther were still in the relationship, Lowther's other employees had left, and Williams was Lowther's sole employee.

¶4     In June 2002, Williams and her husband initiated proceedings to adopt a third child. In summer of 2002 Lowther began pressing Williams to divorce her husband. Through the end of 2002 and into early 2003, Williams resisted this pressuring, citing to the pending adoption of the child and the untimeliness of initiating a divorce during the holiday season. In May 2003 Williams' husband lost his job, and he decided to stay home with their children. For some reason, this infuriated Lowther and he felt betrayed. Lowther then increased his efforts to persuade Williams to leave her husband. However, these efforts were not successful, and in late May of 2003 Williams ceased having sexual relations with Lowther.

¶5     From this point, things went steadily downhill between Lowther and Williams. The two quarreled in public, and the work environment was tense and unbearable to Lowther because he and Williams were the only persons working at the Corporation. On June 20, 2003, Lowther met with Williams, telling her he could not "take" the situation between them anymore. Lowther told Williams that he needed her more personally than professionally. He offered her a severance package consisting of wages and a lump sum payment and gave her a choice: either resume an intimate relationship with him, or leave her job. At the time, Williams was making approximately $36,000 per year and needed the money to support her family. She was shocked and angry, and refused Lowther's offer.

4

¶6     The next day, Williams telephoned Lowther and told him she had gone to an attorney, and that if he attempted to end her employment or reduce her wages he would be in "big trouble." Lowther reiterated his previous offer, increasing the amount of the lump sum payment. Williams refused this offer as well.

¶7     On August 4, 2003, Lowther terminated Williams' employment with the Corporation. After a lengthy discussion concerning the status of pending business matters for the Corporation, Lowther again told Williams that he needed her more personally than professionally, and again offered her a choice between resuming an intimate relationship with him and losing her job. Williams refused to leave her husband and resume her relationship with Lowther.

¶8     After she was fired, Williams went to executives for Farmers and complained that she had been wrongfully discharged. Williams told the executives that she had an "emotional" relationship with Lowther, but falsely denied that she had a "physical" relationship with him. Williams' statements to the Farmers' executives led them to believe that Lowther had pursued a sexual relationship with Williams and that she found his attentions unwelcome during the entire relationship.

¶9     The Farmers' executives arranged a meeting with Lowther to discuss this matter. He lied about firing Williams, and falsely denied he had had a physical relationship with her. He did, however, admit to much of the rest of the relationship, including the exchange of notes and gifts, and his repeated statements that he needed her personally, but not professionally. Soon after this meeting on August 15, 2003, Farmers' executives

gave Lowther the option of resigning from his position as district manager for Farmers, or being fired. He chose the former course.

¶10 On November 21, 2003, Williams filed a complaint with the Department, alleging that the Corporation "discriminated against her on the basis of sex (female) when it subjected her to unwelcome *quid pro quo* sexual harassment culminating when [the Corporation] terminated her employment on or about August 4, 2003." A contested case hearing on the matter was held in Billings on October 18 and 19, 2004, before a hearing examiner for the Department. On March 7, 2005, the hearing examiner issued a Final Agency Decision. On the basis of extensive findings of facts and conclusions of law, the examiner ruled in favor of Williams, concluding that the Corporation "discriminated against her because of sex." The examiner ordered the Corporation to pay Williams $30,155.13 in damages.

¶11 Lowther appealed this ruling to the HRC. On May 26, 2005, the HRC affirmed the Department's Final Agency Decision. In its order, the HRC held as follows:

> In discussion, the Commission noted that, in the end, this is still an employment relationship. Joe Lowther was Lisa Williams supervisor and, as the employer, Lowther's actions should not be excused simply because the office is smaller than others are. The employer failed to consider other options besides termination. Therefore, after careful and due consideration, the Commission concludes that the Final Agency Decision in this matter is supported by substantial evidence and complies with the essential requirements of the law. *Admin R. Mont. 24.9.1717(2).*

¶12 Lowther appealed the HRC's ruling to the District Court, challenging the Department's Final Agency Decision on several grounds. First, he argued that procedural irregularities in the proceedings prejudiced his substantial rights. Second, he maintained

that although the hearing examiner had noted valid, non-discriminatory reasons for Williams' firing, he failed to make findings essential to a "mixed motive" analysis.[1] Lowther argued that at best Williams proved a "mixed motive" case, and that the Department improperly awarded damages in violation of Admin. R. M. 24.9.611. Third, Lowther contended that Williams had failed to prove she was a member of a protected class, and further failed to prove that her termination was due to illegal discrimination, instead of simply the natural fallout from the end of her personal relationship with Lowther.

¶13    The District Court rejected Lowther's challenges, and affirmed the rulings of the HRC and hearing examiner. The District Court concluded that Williams had made a prima facie showing of a case of quid pro quo sexual discrimination, and that a presumption that the termination was not based on sexual discrimination, because of the previous consensual relationship, did not apply. As stated by the District Court:

> The timing of the termination is all-important to this case—a point Petitioner is intent on overlooking. As noted above and explained more fully in the Agency's Findings of Fact, in late May 2003, the parties stopped having sex. Petitioner pressured Respondent to leave her husband. On June 20, 2003, after months of discussion and consternation regarding their future relationship, Petitioner offered Respondent a severance package and a choice. She could either resume an intimate relationship with Petitioner and leave her husband, or she could leave her job. Respondent did not want to resume her relationship with Petitioner or leave her job. On August 4, 2003, Petitioner fired Respondent.
>
> The Agency concluded and this Court agrees that Petitioner's actions constituted *quid quo pro* sexual harassment. His pressuring Respondent to

---

[1] "Mixed motive" cases are situations where there may be other, non-discriminatory reasons for a decision to terminate. *E.g.*, *Laudert v. Richland Co. Sheriff's Dept.*, 2000 MT 218, 301 Mont. 114, 7 P.3d 386.

resume their relationship amounted to unwelcomed sexual advances, requests, and conduct. He then made Respondent's submission to the choice he offered explicitly a term of her employment. Her rejection of Petitioner's choice was the reason for her dismissal.

¶14 The District Court, citing *Lincoln Co. v. Sanders Co.*, 261 Mont. 344, 862 P.2d 1133 (1993) and § 2-4-702(1)(b), MCA, also rejected Lowther's "mixed motive" argument, holding that because Lowther failed to raise this argument before the hearing examiner he could not raise it for judicial review before the District Court. Moreover, the District Court noted that while Lowther offered a variety of non-discriminatory reasons for his decision to terminate Williams, this was done after Williams had made a prima facie case for sexual discrimination. Thus, the burden had already shifted to Lowther to prove non-discriminatory reasons for the termination. The hearing examiner found Lowther's proffered reasons for the termination, including poor work performance and a job offer Williams allegedly had received with another company, to be pre-textual. In particular, the District Court pointed to the hearing examiner's Finding of Fact No. 42, where the examiner found that even after Lowther had terminated Williams he offered her the choice of returning to her job if she resumed her intimate relationship with him, as undercutting any argument that Lowther fired Williams for non-discriminatory reasons. The District Court also rejected Lowther's argument that the hearing examiner failed to make "specific and substantial findings of pretext before it rejected his legitimate, non-discriminatory reasons for Respondent's termination." The District Court pointed specifically to roughly fifteen Findings of Fact that provided substantial support for the hearing examiner's decision.

8

¶15 Additionally, the District Court rejected Lowther's claim that the hearing examiner prejudiced his rights by virtue of irregularities in the proceedings. At the hearing, Lowther attempted to offer expert testimony which would have explained why his decision to terminate Williams was commercially reasonable in light of a "love contract" which the parties had allegedly entered into. This "love contract" was supposedly an agreement between the parties that if the relationship ended, Williams would leave the Corporation. The hearing officer rejected this expert testimony as irrelevant, and noted that whether or not the parties entered into a "love contract" was a question of fact that did not require expert testimony to resolve. Lastly, the District Court rejected Lowther's argument that the hearing examiner prejudiced his substantial rights by changing the legal basis for his decision. Lowther maintained the hearing examiner first announced that he would apply the standard found in *Keppler v. Hinsdale Tp. High Sch. Dist. 86*, 715 F. Supp. 862 (N.D. Ill. 1989), which Lowther claims mandates a presumption of non-discriminatory reasons for a termination when the parties had initially entered into a consensual sexual relationship, but then changed course and rejected the adoption of this presumption in his final decision. The District Court discounted this argument, finding that the hearing examiner never adopted the *Keppler* presumption, nor was he required to do so.

¶16 Lowther appeals the District Court's decision to this Court and raises four issues. However, we decline to address three of these issues because he failed to either raise them below, or properly preserve them for appeal. *Unified Indus., Inc. v. Easley*, 1998 MT 145, ¶ 15, 289 Mont. 255, ¶ 15, 961 P.2d 100, ¶ 15 ("The general rule in Montana is

9

that this Court will not address either an issue raised for the first time on appeal or a party's change in legal theory."). For instance, Lowther argues that the HRC erred in affirming the hearing examiner's decision on the basis that the Corporation failed to pursue other options prior to terminating Williams. See ¶ 11. However, Lowther did not raise this issue before the District Court. Similarly, Lowther argues that Williams should be denied relief due to her failure to mitigate damages stemming from her termination. Again, Lowther failed to raise this issue before the District Court. Finally, Lowther argues that he has proved a "mixed motive" case, and that damages were improper under Admin. R. M. 24.9.611. Although he did raise this issue before the District Court, the District Court rejected it because he had not raised it before the hearing examiner. See ¶ 14. Lowther could have challenged this conclusion under § 2-4-702(1)(b), MCA, provided he could demonstrate that his failure to raise the argument before the agency was for "good cause." However, Lowther has not presented this argument, or even alluded to this statute in his briefs. Thus, we decline to address the foregoing issues on appeal.

## ISSUE

¶17 We state the remaining issue on appeal as follows: *Did the District Court err in affirming the decisions of the HRC and the Department that the Corporation terminated Williams' employment based on illegal sexual discrimination?*

## STANDARD OF REVIEW

¶18 "A district court reviews an administrative decision in a contested case to determine whether the findings of fact are clearly erroneous and whether the agency

10

correctly interpreted the law. We employ the same standards when reviewing a district court order affirming or reversing an administrative decision." *Ostergren v. Dept. of Revenue*, 2004 MT 30, ¶ 11, 319 Mont. 405, ¶ 11, 85 P.3d 738, ¶ 11 (citation omitted). Moreover, "[p]arties must raise issues and present and develop evidence at the agency level. A district court has no authority to address new evidence on judicial review of agency determinations. As such, this Court is bound by the same limited scope of review." *Ostergren*, ¶ 15.

## DISCUSSION

¶19 Lowther argues that Williams failed to prove her termination was due to discrimination based on her sex, and that the Department, HRC, and the District Court, erred in concluding otherwise. In particular, Lowther argues that under *Bryson v. Chi. St. U.*, 96 F.3d 912 (7th Cir. 1996), Williams was required to prove she is a member of a protected class, that she was subject to unwanted sexual advances, and that Lowther's conduct was sexually motivated, but she has failed to do so. Lowther also claims that under *Keppler*, a presumption arises in this case that his reasons for terminating Williams were due to fallout from their relationship, and not based on sex discrimination, and that Williams has failed to rebut this presumption.

¶20 Williams argues that the District Court, HRC, and the Department correctly determined that she was terminated based on sexual discrimination. Williams argues that even under *Keppler*, which is arguably supportive of Lowther's position, she has proven sex discrimination, because *Keppler* recognizes that "if an employer threatens retaliation to the employee if the employee fails to continue the relationship, there can be an action

11

based on gender or sex." Williams cites Finding of Fact No. 42 (See ¶ 14) as support for this conclusion, and points out that Lowther has not alleged this finding, or indeed any of the other findings, are clearly erroneous. Additionally, Williams refutes Lowther's arguments that she was not subject to unwanted sexual advances. Williams maintains that Lowther's repeated requests for her to return to the relationship were requests for sexual favors, thus constituting unwanted sexual advances. Finally, Williams argues the hearing examiner correctly concluded that the issue of Lowther's motivation in resuming their intimate relationship was a question of fact, and that Lowther failed to prove before the examiner that he "was motivated to return to the former relationship for reasons other than sex."

¶21 The Montana Human Rights Act (MHRA) bans employment discrimination because of sex. Section 49-2-303(1)(a), MCA. Quid pro quo sexual discrimination claims are cognizable under the MHRA. *Campbell v. Garden City Plumbing and Heating*, 2004 MT 231, ¶ 15, 322 Mont. 434, ¶ 15, 97 P.2d 546, ¶ 15. Because the MHRA is closely modeled after Title VII of the Civil Rights Act of 1964, we frequently refer to federal case law in construing the MHRA. *Stringer-Altmaier v. Haffner*, 2006 MT 129, ¶¶ 16-17, 332 Mont. 293, ¶¶ 16-17, 138 P.3d 419, ¶¶ 16-17.

¶22 To date, we have not explicitly defined the elements required to make a prima facie case for quid pro quo sex discrimination. The hearing examiner, recognizing this, cited to the definition for actionable sexual harassment as set forth in 29 C.F.R. § 1604.11, which was adopted pursuant to Admin. R. M. 24.9.1407. *Harrison v. Chance*, 244 Mont. 215, 220-221, 797 P.2d 200, 203-204 (1990).

12

Unwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature constitute sexual harassment when (1) submission to such conduct is made either explicitly or implicitly a term or condition of an individual's employment, (2) submission to or rejection of such conduct by an individual is used as the basis for employment decisions affecting such individual . . . .

29 C.F.R. § 1604.11(a).

¶23　The hearing examiner further found that under federal law a quid pro quo sexual discrimination claim is properly considered as a "job detriment claim." The hearing examiner cited to *Priest v. Rotary*, 634 F. Supp. 571 (N.D. Cal. 1986), where the court equated job detriment claims to situations where "tangible job benefits [are conditioned] on acquiescence to requests for sexual favors or other conduct of a sexual nature . . . ." *Priest*, 634 F. Supp. at 581. The hearing officer also rejected, as inconsistent with the MHRA, Lowther's argument that in cases where the alleged sex discrimination follows the ending of a consensual sexual relationship, *Keppler* requires courts to adopt a presumption that the alleged harassment is fallout from the relationship, and shift the burden to the claimant to show that the conduct was due to sex discrimination. *Keppler*, 715 F. Supp. at 868-69.

¶24　Before the District Court, and on appeal, Lowther urges us to adopt the *Keppler* presumption as well as a five-factor test from *Bryson* which requires claimants to make the following prima facie showing in quid pro quo sex discrimination cases:

In order to prove such a claim, many courts of appeal use a five-part test, asking whether the plaintiff has shown (1) that she or he is a member of a protected group, (2) the sexual advances were unwelcome, (3) the harassment was sexually motivated, (4) the employee's reaction to the supervisor's advances affected a tangible aspect of her employment, and (5) respondeat superior has been established.

*Bryson*, 96 F.3d at 915.

¶25    The District Court declined to adopt this five-factor test, concluding that "the elements found in the federal Guidelines are the proper method to determine whether an employer has committed *quid pro quo* sexual harassment.  If a party can satisfy the terms found therein, that is sufficient to establish a *prima facie* case of *quid pro quo* sexual harassment.   There is no need to employ an unnecessarily complicated and overly formalistic test."   Similarly, the District Court rejected the adoption of the *Keppler* presumption in Montana, noting that its holding has been criticized by other courts.  *E.g.*, *Babcock v. Frank*, 729 F. Supp. 279 (S.D.N.Y. 1990).   While the District Court acknowledged that a previous consensual relationship may play a role in determining whether sex discrimination has occurred in some cases, the District Court found such a factor inapplicable to the present controversy.  As stated by the District Court:

> [W]hen, as in the instant case, the affair is over and the employer threatens a penalty if the employee will not continue the physical relationship, the employer "commits illegal sex-based discrimination cognizable" under a *quid pro quo* claim. *Babcock*, 729 F. Supp. at 288.

¶26    Accordingly, the District Court focused its analysis on whether the hearing examiner's findings supported Williams' claims of sex discrimination.   The District Court concluded that they did, see ¶ 13, and rejected Lowther's attempts to rebut this showing "by characterizing his efforts to win Respondent back as motivated by his desire to continue their romantic relationship and not by a desire for sexual intercourse with an employee."

14

¶27 We affirm the District Court's conclusion. Lowther has provided no persuasive reason to adopt the multi-factor *Bryson* test, or the *Keppler* presumption. Instead, we will continue looking to both our body of case law and the federal guidelines in resolving sex discrimination claims. *Harrison*, 244 Mont. at 220-221, 797 P.2d at 203-04. As noted by the district court in *Savino v. C.P. Hall Co.*, 988 F. Supp. 1171 (N.D. Ill. 1997), "[on] the quid pro quo question . . . the [Supreme] Court [has] noted that the E.E.O.C.'s Guidelines on Sexual Harassment 'constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance.' " *Savino*, 988 F. Supp. at 1181 (quoting *Meritor Savings Bank, FSB, v. Vinson*, 477 U.S. 57, 65, 106 S. Ct. 2399, 2404 (1986)).

¶28 As Williams notes, Lowther does not challenge as clearly erroneous the hearing examiner's Finding of Fact No. 42 that even after he terminated her employment he offered Williams the choice of having her job back if she resumed the intimate relationship. The assertion by Lowther that this overture was not sexually motivated strains the bounds of credulity. This finding, in light of Lowther's repeated efforts to condition Williams' employment on continuation of the intimate relationship, demonstrates that "submission to or rejection of such conduct by [Williams was] used as the basis for employment decisions affecting [her] . . . ." *Harrison*, 244 Mont. at 220-221, 797 P.2d at 203-04 (citing 29 C.F.R. § 1604.11(a)). Thus, we affirm the District Court.

**CONCLUSION**

15

¶29 We affirm the District Court's decision upholding the award of damages by the Department and HRC to Williams due to illegal sex discrimination by Lowther and the Corporation.

/S/ PATRICIA COTTER

We Concur:

/S/ KARLA M. GRAY
/S/ JOHN WARNER
/S/ BRIAN MORRIS

Justice W. William Leaphart, specially concurring.

¶30 I write separately to note that I am inclined to agree with Lowther that there is a distinction between harassment based upon "gender" as opposed to personal animus stemming from a "failed relationship." The majority of federal courts recognize such a distinction. *See e.g.* *Mosher v. Dollar Tree Stores, Inc.*, 240 F.3d 662, 668 (7th Cir. 2001) ("[A]fter a longtime sexual relationship like this one goes sour, it will be only the unusual case that can escape summary judgment."); *Excel Corp. v. Bosley*, 165 F.3d 635, 641 (8th Cir. 1999) (J. Loken, concurring) (writing separately to distinguish between personal animus from discrimination because of gender). *See also Succar v. Dade County School Bd.*, 229 F.3d 1343, 1345 (11th Cir. 2000) (holding the "harassment . . . was motivated not by his male gender, but rather by [the former lover's] contempt for

[plaintiff] following their failed relationship; [plaintiff's] gender was merely coincidental."); *accord Pipkins v. City of Temple Terrace, Fla.*, 267 F.3d 1197, 1200 (11th Cir. 2001); *but see Lipphardt v. Durango Steakhouse of Brandon, Inc.*, 267 F.3d 1183 (11th Cir. 2001). However, that distinction hinges upon a fact-intensive inquiry. Here, Lowther does not challenge the agency's finding that he gave Williams an ultimatum which was "sexual" in nature; that is, resume the sexual relationship or be fired. Since Lowther has not challenged that finding, he is unable to effectively contest the conclusion that his offer was a quid pro quo sexual harassment. Accordingly, I concur.

/S/ W. WILLIAM LEAPHART