DA 08-0213

IN THE SUPREME COURT OF THE STATE OF MONTANA

2008 MT 335

IN THE MATTER OF:

T.C.,

        A Youth in Need of Care.

APPEAL FROM:    District Court of the Second Judicial District,
In and For the County of Butte/Silver Bow, Cause No. DN 07-10-BN
Honorable Brad Newman, Presiding Judge

COUNSEL OF RECORD:

        For Appellant:

                Jim Wheelis, Chief Appellate Defender; Joslyn Hunt, Assistant Appellate
Defender, Helena, Montana

        For Appellee:

                Hon. Mike McGrath, Attorney General; Mark W. Mattioli, Assistant
Attorney General, Helena, Montana

Submitted on Briefs:  August 27, 2008

Decided:  October 6, 2008

Filed:

_____
                         Clerk

Justice Brian Morris delivered the Opinion of the Court.

¶1      P.Y. appeals from an order of the Second Judicial District, Silver Bow County, terminating her parental rights.  We affirm.

¶2      We review the following issue on appeal:

¶3      *Did the District Court abuse its discretion in terminating the parent-child relationship between P.Y. and T.C.?*

## FACTUAL AND PROCEDURAL BACKGROUND

¶4      The Department of Health and Human Services (Department) received a report from T.C.'s caretaker on December 19, 2006.  The caretaker, T.C.'s maternal great aunt, stated that P.Y. was acting irrationally on the phone and wanted to pick up her four-year-old daughter T.C.  When contacted by social worker Kara Richardson by phone, P.Y. was irrational, deceptive, and unable to focus during the conversation.  T.C. had been out of her mother's care for nearly a month.

¶5      Richardson was concerned about T.C.'s safety based on her past experience with P.Y.  Richardson requested that P.Y. take a urinalysis to determine whether P.Y. again was abusing drugs.  P.Y. refused to take the urinalysis or otherwise cooperate with the Department.  She indicated that she was on her way to Spokane, Washington, and was not going to let Richardson's inquiries ruin her trip.

¶6      The Department informally placed T.C. with the great aunt.  The Department tried repeatedly to contact P.Y. by letter and by phone.  P.Y. failed to respond to the Department and she did not resume care of T.C.  Richardson finally made contact with P.Y. on February

2

8, 2007, in the Silver Bow County Jail, where P.Y. was in custody on theft charges. The Department placed T.C. in kinship care with the great aunt.

¶7 The Department filed a petition for Emergency Protective Services, Adjudication as Youth in Need of Care and Temporary Legal Custody. The Department filed an accompanying affidavit of social worker Richardson detailing the specific allegations. Richardson adopted the averments in her affidavit at the adjudication hearing on March 7, 2007, and expanded on the Department's concerns for T.C.'s welfare. Richardson noted that she had worked with P.Y. in 2004 when the Department obtained temporary legal custody over T.C. because of P.Y.'s methamphetamine use. Richardson testified that P.Y was exhibiting similar characteristics to those that she had exhibited in 2004.

¶8 P.Y.'s mother testified that she often cared for T.C. when P.Y. was "coming and going." P.Y.'s mother further testified that her son who lived with her had an alcohol problem and had frequent altercations with P.Y. The mother testified that she had warned P.Y. that P.Y. should not take T.C. with her to Spokane and leave T.C. in the care of people whom T.C. did not know. P.Y's mother also expressed concern about P.Y. taking T.C. to Spokane because P.Y. was associating with people with criminal records.

¶9 The District Court found evidence that T.C. was a youth in need of care based on social worker Richardson's affidavit and the testimony of Richardson and P.Y.'s mother. The District Court specifically found that T.C. had been abused or neglected or that there was a reasonable likelihood that she would be abused or neglected if there was no intervention in the family situation. The District Court entered an order adjudicating T.C. as

3

a youth in need of care and granting the Department temporary custody. The District Court entered specific findings of fact regarding the nature of the abuse and neglect. The District Court found that returning T.C. to P.Y.'s care would place T.C. at an unreasonable risk of harm affecting her health and well-being.

¶10 The District Court ordered two separate treatment plans in the ensuing months with specific goals for P.Y. aimed at returning T.C. to her custody. P.Y. refused to sign the treatment plans. The District Court twice extended the temporary legal custody to give P.Y. an opportunity to complete successfully the treatment plans. P.Y. did not cooperate with the Department, and she made virtually no effort to comply with the treatment plans.

¶11 The Department filed a Motion for a Permanency Hearing on February 14, 2008, with an accompanying affidavit. The Department noted that T.C. was thriving in the home of her great aunt and uncle and that the couple was committed to providing T.C. a permanent home by adopting her. The Department recommended that T.C. be placed permanently in the home. The District Court held a permanency hearing on February 27, 2008. The District Court approved the Department's permanency plan in its order of February 29, 2008.

¶12 The Department filed a Petition for Permanent Legal Custody and Termination of Parental Rights with Right to Consent to Adoption. The District Court held the parental termination hearing on March 26, 2008. The District Court granted the State's petition in its Findings of Fact, Conclusions of Law and Order Terminating Parental Rights. The District Court found that P.Y. had failed to complete successfully either of the appropriate court approved treatment plans. The District Court also found that the conduct or condition of the

4

parents rendering them unfit was not likely to change within the reasonable future, based on P.Y.'s recent criminal convictions and the lack of even minimal effort to comply with the treatment plans.

## STANDARD OF REVIEW

¶13    We review a district court's decision to terminate parental rights for an abuse of discretion. *In re M.P.*, 2008 MT 39, ¶ 16, 341 Mont. 333, ¶ 16, 177 P.3d 495, ¶ 16. A district court abuses its discretion if it acts arbitrarily, without employment of conscientious judgment, or so exceeds the bounds of reason as to perform a substantial injustice. *In re M.P.*, ¶ 16.

¶14    We review a district court's findings of fact to determine whether they are clearly erroneous. *In re D.B.*, 2007 MT 246, ¶ 18, 339 Mont. 240, ¶ 16, 168 P.3d 691, ¶ 18. We will consider a district court's findings of fact clearly erroneous if the finding is unsupported by substantial evidence, if the court misapprehended the effect of the evidence, or if the finding leaves this Court with the definite and firm conviction that the district court made a mistake. *In re S.T.*, 2008 MT 19, ¶ 8, 341 Mont. 176, ¶ 8, 176 P.3d 1054, ¶ 8. We review a district court's conclusions of law to determine whether the district court correctly interpreted and applied the law. *In re M.P.*, ¶ 17.

## DISCUSSION

¶15    *Did the District Court abuse its discretion in terminating the parent-child relationship between P.Y. and T.C.?*

5

¶16 A parent's right to the care and custody of a child constitutes a fundamental liberty interest that fundamentally fair procedures must protect. *In re D.B.*, ¶ 17. Fundamental fairness and due process require that a parent not be placed at an unfair disadvantage during the termination proceedings. *In re A.S.*, 2006 MT 281, ¶ 33, 334 Mont. 280, ¶ 33, 146 P.3d 778, ¶ 33. The court's primary consideration is the physical, mental, and emotional condition and needs of the child, however, and therefore the best interests of the child are paramount and must take precedence over parental rights. *In re R.T.*, 2005 MT 173, ¶ 13, 327 Mont. 498, ¶ 13, 116 P.3d 783, ¶ 13 (citing § 41-3-609(3), MCA).

¶17 Section 41-3-609(1)(f), MCA, provides that a court may order termination of a parent-child legal relationship if the child qualifies as a youth in need of care and (1) the parent has failed to comply with an appropriate treatment plan, and (2) the condition or conduct rendering the parent unfit is unlikely to change within a reasonable period of time. To adjudicate a child as a youth in need of care, the Department must prove by a preponderance of the evidence that the child has suffered from abuse or neglect by a parent. *In re A.S.*, ¶ 30 (citing § 41-3-102(3), MCA). The abuse or neglect may be actual physical or psychological harm to a child, or substantial risk of physical or psychological harm to a child by the acts or omissions of a person responsible for the child's welfare. *In re A.S.*, ¶ 30 (citing § 41-3-102(7), MCA).

¶18 P.Y. does not challenge the District Court's finding that she failed to complete the treatment plans or the District Court's finding that the condition rendering her unfit was unlikely to change within a reasonable time. P.Y. instead challenges only T.C.'s

adjudication as a youth in need of care. She argues that the District Court improperly adjudicated T.C. as a youth in need of care, and that this improper adjudication invalidated the subsequent parental termination.

¶19 P.Y. argues that she had notice only as to allegations of actual physical neglect. P.Y. alleges that she did not have notice that the allegations included a substantial risk of physical neglect. She contends that the allegation according to the petition and social worker Richardson's affidavit was "physical neglect," and that consequently, § 41-3-102(7)(a)(i), MCA, dealing only with actual physical abuse, represents the only applicable statutory provision for which she had notice. P.Y. argues that the District Court's order violated her due process rights when it discussed the substantial risk of abuse or neglect instead of focusing solely on actual neglect. P.Y.'s argument falters on several bases.

¶20 We note first that P.Y. did not voice the lack of notice argument until this appeal. She did not object at the youth in need of care hearing. She did not object or in any way indicate to the District Court that any irregularities existed in the adjudicatory proceeding in the more than twelve months that elapsed between the adjudicatory hearing and the termination hearing. She did not raise the issue of lack of notice at the termination hearing. This Court generally will not address either an issue raised for the first time on appeal or a party's change in legal theory. *Williams v. Lowther*, 2008 MT 46, ¶ 16, 341 Mont. 394, ¶ 16, 177 P.3d 1018, ¶ 16.

¶21 Moreover, P.Y.'s argument that she had notice only of physical neglect lacks merit. P.Y. fails to mention the other bases upon which the Department relied in the same affidavit

7

and petition. Both the petition and affidavit describe T.C. as abused or neglected, or in danger of being abused or neglected. The term "abused or neglected" means the state or condition of a child who has suffered child abuse or neglect. Section 41-3-102(3), MCA. The term "child abuse or neglect" includes not only actual harm to a child's health or welfare, but also threatened harm to a child's health or welfare. Section 41-3-102(7)(a), MCA; *In re A.M.*, 2001 MT 60, ¶ 41, 304 Mont. 379, ¶ 41, 22 P.3d 185, ¶ 41. The term "physical neglect" includes the failure to provide basic necessities or general supervision, or allowing the child to be exposed to an unreasonable physical or psychological risk. Section 41-3-102(20), MCA. The Department's affidavit and petition clearly provided P.Y. with notice that the allegations against her included more than actual physical abuse.

¶22 The District Court determined T.C. to be a youth in need of care after considering all of the evidence. The District Court based its determination on P.Y.'s irrational behavior, her lack of cooperation with the department, her failure to care for her child, concerns of drug abuse, and her refusal to take a urinalysis. The District Court determined that the return of T.C. to the home would place T.C. at an unreasonable risk of harm affecting her health and well-being. Substantial evidence supported the District Court's finding that T.C. was a youth in need of care, and the finding is not otherwise erroneous. We conclude that the District Court did not abuse its discretion when it terminated P.Y.'s parental rights.

¶23 Affirmed.

/S/ BRIAN MORRIS

We Concur:

/S/ KARLA M. GRAY
/S/ PATRICIA COTTER
/S/ W. WILLIAM LEAPHART
/S/ JIM RICE